DOEHLA GREETING CARDS, Inc., et al., Appellants,

v.

Arthur E. SUMMERFIELD, Postmaster General of the United States, Appellee.

No. 12484.

United States Court of Appeals District of Columbia Circuit.

Argued June 22, 1955.

Decided Nov. 3, 1955.

Mr. William A. Roberts, Washington, D. C., with whom Messrs. Edgar Turlington and Philip S. Jessup, Washington, D. C., were on the brief, for appellants.

Mr. Harold H. Greene, Asst. U. S. Atty., with whom Messrs. Leo A. Rover, U. S. Atty., Lewis Carroll and Frank H. Strickler, Asst. U. S. Attys., Edward M. Reidy, General Counsel, Interstate Commerce Commission, and Paul Meininger, Attorney, Post Office Dept., were on the brief, for appellee.

Before PRETTYMAN, WILBUR K. MILLER and BASTIAN, Circuit Judges.

BASTIAN, Circuit Judge.

This is an action to enjoin the enforcement of parcel post zone rates with respect to certain fourth class mail. The complaint alleges that the plaintiffs, greeting card companies, are users of the parcel post service and will be compelled to pay the increased rates; that the new rate order was promulgated without regard to the statutory limitations upon the authority of the Postmaster General; and that it deprives the plaintiffs of property without due process of law. Plaintiffs allege that this court has jurisdiction of cases involving postal laws under either 28 U.S. C.A. § 1339 or 5 U.S.C.A. § 1009, the section of the Administrative Procedure Act providing for judicial review.

In the trial court, plaintiffs originally named Arthur E. Summerfield in his individual capacity, along with the members of the Interstate Commerce Commission. That complaint was dismissed for failure to name the defendant Summerfield and the members of the Interstate Commerce Commission in their official capacities, they having been named merely as individuals, and for the additional reason that the subject matter of the suit was moot as to the Commissioners. D.C., 116 F.Supp. 68. An amended complaint was filed changing the original complaint so as to name the Postmaster General in his official capacity only and removing the members of the Commission as defendants, thus eliminating the basis for the original dismissal. The amended complaint was dismissed without opinion. It is from this second dismissal that the appeal is taken.

The Government argues, *inter alia*, that this action is, in effect, an unconsented suit against the United States. We will concern ourselves with this point for we see from a reading of the complaint that the relief sought is against appellee as an officer of the sovereign and agent of the Government. Therefore, unless the appellants can except themselves from the rule of sovereign immunity, the suit must fail as one against the United States to which no consent has been given.

In a suit against an administrative officer of the United States, the problem of jurisdiction is a perennial one and its importance can in no way be mini-

mized. The complexity of this jurisdictional problem is of no little concern. As this court said in West Coast Exploration Co. v. McKay, 93 U.S.App.D.C. 307, 213 F.2d 582, certiorari denied 1954, 347 U.S. 989, 74 S.Ct. 850, 98 L.Ed. 1123:

"Where a plaintiff asserts in his complaint that an officer of the Government is acting without power and that, therefore his acts are invalid, the court, in determining the preliminary jurisdictional question whether or not the United States is a necessary party, is confronted with a problem arising out of the fact that the determination of that question involves passing upon the very question involved in the merits." 213 F.2d at page 592.

In a similar situation with respect to control of the Post Office Department, this position regarding discretionary action of the heads of the executive departments has been set forth by the Second Circuit. In Transcontinental & Western Air v. Farley, 71 F.2d 288, certiorari denied, 293 U.S. 603, 55 S.Ct. 119, 79 L.Ed. 695 (Oct. 15, 1934), the court points out:

"The courts will enforce ministerial duties required of executive officers by mandates of Congress and will enjoin acts such as trespass, a step taken beyond the scope of statutory authority or jurisdiction of executive officers, but they will not interfere with matters intrusted by Congress to the discretion of the heads of executive departments of the government." 71 F.2d at page 291.

The action of the Postmaster General is in reality the action of the United States. The United States is therefore the real party affected by the judgment and against which in fact it will have to operate. The action of an officer of the sovereign can be regarded as illegal only when such action is not within the officer's statutory powers or,

if within those powers, only if the powers or their exercise in the particular case are constitutionally void. See Larson v. Domestic and Foreign Commerce Corp., 1949, 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628.

No allegation of unconstitutionality of the statute is urged; hence, we need not concern ourselves with that aspect. As to actions beyond the statutory limitation, such actions of the officer are considered individual, not sovereign, on the theory that the actions are *ultra vires* and, therefore, specific relief may be obtained. Of prime importance, however, is the fact that in such cases the relief can be granted without impleading the sovereign only because of the officer's lack of delegated power. A claim of error in the exercise of that power is not sufficient.

In the instant case, the statute, 39 U.S.C.A. § 247, provides that "if the Postmaster General shall find on experience that [the rates of postage] * * * are such as * * * to permanently render the cost of the service greater than the receipts" he shall, with the consent of the Interstate Commerce Commission, re-form the rates. Let us assume for the moment, accepting appellants' argument, that the Postmaster General applied for the consent of the Interstate Commerce Commission without first making a finding from experience that the costs are more than the receipts on a certain class of mail. The question then is whether his action was beyond the scope of his statutory authority or whether it was merely legally erroneous.

Not every statutory prescription of elements requisite to administrative action is jurisdictional. Sometimes a statute merely prescribes the elements necessary to a sound ruling. The line between such a required premise and a jurisdictional prerequisite is often vague and difficult to fix. In the case at bar we think the statutory direction concerning a finding from experience is

merely a direction as to how the Postmaster General shall proceed; it is not a jurisdictional prerequisite for his action. He proceeded in accordance with his construction of the statutory direction.[1] He was rational in his action and not arbitrary or capricious. Even if he acted erroneously he was within the scope of statutory power; he erroneously performed a statutory duty. It follows that the error of law, if any, was an error in the performance of a function of the sovereign, and the courts may not enjoin the action.

As this court said in State of Arizona ex rel. Arizona State Board of Public Welfare v. Hobby, 94 U.S.App.D.C. 170, 221 F.2d 498, 500:

"Erroneous action taken in the exercise of an admittedly validly delegated power is 'inescapably the action of the United States and the effort to enjoin it must fail as an effort to enjoin the United States.'" Citing Larson v. Domestic and Foreign Commerce Corp., supra, 337 U.S. at page 703, 69 S.Ct. at page 1468.

Even though the United States has not been joined formally as a party, we think that its interest is directly involved in the present situation, and any relief given will operate against the sovereign. Hence the suit cannot be maintained.

The judgment of the District Court should be and is

Affirmed.

Affirmed.

1. The complaint alleged that in justification of his request for consent of the Interstate Commerce Commission, the Postmaster General submitted to that Commission a ruling by the Comptroller General involving a construction of an appropriation act; and the complaint further recited the two statutes said to govern the Postmaster General, and described the Comptroller General's ruling at some length.