Arthur E. SUMMERFIELD, Individually and as Postmaster General, Appellant,

v.

PARCEL POST ASSOCIATION, INC., et al., Appellees.

No. 15591.

United States Court of Appeals District of Columbia Circuit.

Argued April 28, 1960.

Decided June 16, 1960.

Mr. Arthur H. Fribourg, Atty., Dept. of Justice, with whom Asst. Atty. Gen. George C. Doub, Messrs. Oliver Gasch, U. S. Atty., and Samuel D. Slade, Atty., Dept. of Justice, were on the brief, for appellant.

Mr. Paul A. Porter, Washington, D. C., with whom Messrs. George Bunn and Roy C. Frank, Washington, D. C., were on the brief, for appellees.

Before PRETTYMAN, Chief Judge, and DANAHER and BASTIAN, Circuit Judges.

DANAHER, Circuit Judge.

The Postmaster General's order promulgating new fourth class mail rates was published in the Federal Register November 25, 1959, effective February 1, 1960 (24 Fed.Reg. 9477–78). The complaint in the District Court charged that the order failed to give effect to standards established by the Congress in the "Postal Policy Act of 1958." [1] Appellants [2] moved to dismiss but the District

1. Title I, Act of May 27, 1958, 72 Stat. 134, 39 U.S.C.A. § 270.

2. The Postmaster General and the members of the Interstate Commerce Commission were named defendants, as having acted both as individuals and in their official capacity.

Court denied their motion. The District Court's order at the same time denied a motion for a preliminary injunction sought by the appellees.[3] Appellants here argue that the District Court erred in concluding that the Postal Policy Act of 1958 set forth standards which were required to be considered by the Postmaster General and the Interstate Commerce Commission in fixing the new fourth class rates. Additionally it is urged that the District Court erred in failing to follow and apply the principles discussed in our opinion in Doehla Greeting Cards v. Summerfield, 1955, 97 U.S.App.D.C. 29, 227 F.2d 44.[4] We have decided that there is error and that the complaint should have been dismissed.

Congress long since provided that the Postmaster General is under an affirmative duty to reform the rates of postage when, as here, he "shall find on experience" that they are such as "to permanently render the cost of the service greater than the receipts of the revenue therefrom."[5] His action, the statute provides, is "subject to the consent of the Interstate Commerce Commission after investigation."[6] To insure his compliance with that duty Congress provided that none of the funds appropriated to the Post Office Department could be withdrawn

"until the Postmaster General shall certify in writing that he has requested the consent of the Interstate Commerce Commission to the establishment of such rate increases or other reformations (in addition to any specific increases or other reformations heretofore or hereafter authorized or prescribed by law), pursuant to the provisions of section 207

of the Act of February 28, 1925, as amended (39 U.S.C. § 247), as may be necessary *to insure the receipt of revenue from fourth-class mail service sufficient to pay the cost of such service * * *.*"[7] (Emphasis added.)

Despite the clear mandate of 39 U.S.C. A. § 247 and the 1950 Act, appellees insist that Congress by the 1958 Act, Title I, imposed new standards which were here ignored and which, if applied, would have precluded an increase in fourth class rates.

The 1958 Act embraces four titles. Title I sets forth Congressional findings and a declaration of the policy which the Congress itself was to apply in dealing with future postal problems. This Title, cited by the District Court as here applicable, in no way relaxed the duty of the Postmaster General to reform fourth class rates except in section 104(a) (1) (L). The latter section provided that losses incurred pursuant to its terms, embodying certain rates fixed by Congress itself in section 206 of the Act, 39 U.S. C.A. §§ 240, 240a, 292a, were to be considered "public services" expenses for the purposes of Title I. As such they were to be the subject of specific appropriation by Congress and not to be absorbed into and become part of the costs to predicate a new rate structure as to fourth class matter. Thus this very Title I in section 106 prescribes: "The provisions of this title shall not require any *downward* adjustment in rates of postage on fourth-class mail existing on the date of enactment of this Act." (Emphasis added.) Clearly Congress recognized that the Postmaster General's duty to "reform"

---

3. Appellee, Parcel Post Association, Inc., is a trade association with a membership of approximately 300 companies which distribute products by parcel post. Three other appellees, mail users, in their individual capacity had appeared as parties protestant in proceedings before the Interstate Commerce Commission, and all joined in seeking relief in the District Court.

4. The District Judge concluded that the Doehla case was not here controlling since it had been decided before enactment of the Postal Policy Act of 1958.

5. 39 U.S.C.A. § 247.

6. Ibid.

7. Act of September 27, 1950, 64 Stat. 1050.

rates was to persist, but he was not to *lower* them because of possible implementation of the policy and principles set forth in Title I.

Title I must be considered and read with the provisions of Title II of the Act, to be cited as "Postal Rate Increase Act, 1958." [8] In this Title by section 206(b), Congress itself fixed the fourth class rates to be charged as to certain matter,[9] but left the Postmaster General subject to the subsisting requirement that he otherwise reform fourth class postal rates. Section 213 [10] amended the 1950 provision, quoted above,[11] to require that rates be fixed by the Postmaster General with the approval of the Interstate Commerce Commission, as may be necessary to insure "(1) that the revenues from fourth-class mail service will not exceed by more than 4 per centum the costs thereof and (2) that the costs of such fourth-class mail service will not exceed by more than 4 per centum the revenues therefrom." Except as shown, we deem the conclusion inescapable that Congress in no way relaxed the obligation upon the Postmaster General with the consent of the Interstate Commerce Commission to establish "such rate increases or other reformations * * * as may be necessary to insure" that fourth class revenues shall not exceed by more than 4 per centum the costs thereof and that costs shall not exceed by more than 4 per centum the revenues from such service. The inclusion of this requirement in Title II of the very Act upon which appellees had relied demonstrates the Congressional purpose that fourth class rates remained, as they had been, subject to reformation by the Postmaster General. His action is not in any manner perceptible to us to be viewed as a usurpation of "the constitutional rate-making power of Congress," as alleged.

The only duty devolving upon the Postmaster General under Title I is spelled out in section 105 where he is directed to initiate and conduct a periodic review of the postal rate structure. His study and survey in specified detail must be the basis for a biennial report "to *enable the Congress* * * * to carry out the purposes of this title [Title I]." (Emphasis added.)

In the view we take of this case, the action of the Postmaster General and of the Interstate Commerce Commission, as here complained of, was commanded by Congress and was within the scope of statutory duties imposed upon the appellant officers. Their action accordingly in the name of the sovereign was "inescapably the action of the United States * * *." [12] Nowhere in the Act is there a suggestion that the United States has consented to be sued on account of the actions at issue, nor is provision made for judicial review of the Postmaster General's rate order.

The case is thus brought squarely within our decision in Doehla Greeting Cards v. Summerfield, 1955, 97 U.S.App.D.C. 29, 227 F.2d 44, which requires that we remand with a direction that the complaint be dismissed. That will be our order.[13]

Reversed and remanded.

8. 72 Stat. 138 (1958).

9. See § 104(a) (1) (L).

10. 72 Stat. 143, 31 U.S.C.A. § 695.

11. Supra note 7.

12. Larson v. Domestic & Foreign Corp., 1949, 337 U.S. 682, 703, 69 S.Ct. 1457, 1468, 93 L.Ed. 1628; cf. Perkins v. Lukens Steel Co., 1940, 310 U.S. 113, 131, 132, 60 S.Ct. 869, 84 L.Ed. 1108.

13. This disposition makes it unnecessary that we consider other points pressed upon us.