446 F.2d 588
 AMERICAN BIBLE SOCIETY, a nonprofit organization of the
State of New York
v.
Winton M. BLOUNT, Postmaster General of the United States,
et al., Appellants.
(D.C. Civil Action No. 46-69)
AMERICAN BOOK-STRATFORD PRESS, INC.
v.
Winton M. BLOUNT, Postmaster General of the United States,
et al., Appellants.
(D.C. Civil Action No. 941-68)
MONTVILLE WAREHOUSING COMPANY, Inc., a Mew Jersey Corp.
v.
Winton M. BLOUNT, Postmaster General of the United States,
et al., Appellants.
(D.C. Civil Action No. 1120-68)
AMERICAN BOOK PUBLISHERS COUNCIL, INC., et al.
v.
Winton M. BLOUNT, Postmaster General of the United States,
et al., Appellants.
(D.C. Civil Action No. 1194-68)
ASSOCIATED BOOK SERVICE, INC.
v.
Winton M. BLOUNT, Postmaster General of the United States,
et al., Appellants.
(D.C. Civil Action No. 1332-68)
SCHOLASTIC MAGAZINES, INC.
v.
Winton M. BLOUNT, Postmaster General of the United States,
et al., Appellants.
(D.C. Civil Action No. 1407-68)
The MacMILLAN COMPANY
v.
Winton M. BLOUNT, Postmaster General of the United States,
et al., Appellants.
(D.C. Civil Action No. 1408-68)
WAYNE WAREHOUSING CORP.
v.
Winton M. BLOUNT, Postmaster General of the United States,
et al., Appellants.
(D.C. Civil Action No. 1358-68)
PRENTICE HALL INC.
v.
Winton M. BLOUNT, Postmaster General of the United States,
Joseph Thomas, Postmaster, Englewood, New Jersey,
Appellants.
(D.C. Civil Action No. 102-69)
HARPER & ROW PUBLISHERS, INCORPORATED
v.
Winton M. BLOUNT, Postmaster General of the United States
and Bernard J. Harding, Scranton, Pa., Postmaster,
Appellants.
(D.C. Civil Action No. 469-69)
HADDON CRAFTSMEN, INC.
v.
Winton M. BLOUNT, Postmaster General of the United States
and Bernard J. Harding, Scranton, Pa., Postmaster,
Appellants.
(D.C. Civil Action No. 470-69)
REGENSTEINER PUBLISHING ENTERPRISES, INC., and Chicago Book
Manufacturing, Inc.
v.
Winton M. BLOUNT, Postmaster General of the United States
and Henry McGee, Postmaster of the United States
Post Office at Chicago, Illinois, Appellants.
(D.C. Civil Action No. 472-69)
NATIONAL BOOK COMPANY OF SCRANTON
v.
Winton M. BLOUNT, Postmaster General of the United States
and Bernard J. Harding, Scranton, Pa., Postmaster,
Appellants.
(D.C. Civil Action No. 551-69)
 Nos. 18811-18817, 19008-19014, 19016-19021.
 United States Court of Appeals, Third Circuit.
 Argued May 3, 1971.
Decided July 12, 1971.
 
 Walter H. Fleischer, Department of Justice, Washington, D.C. (William D. Ruckelshaus, Asst. Atty. Gen., Frederick B. Lacey, U.S. Atty., Robert V. Zener, Alexander P. Humphrey, Attys., Department of Justice, Washington, D.C., L. Patrick Gray, III, Asst. Atty. Gen., Herbert J. Stern, U.S. Atty., on the brief), for appellants.
 Michael Edelson, Hellring, Lindeman & Landau, Newark, N.J., argued for appellees in No. 19,020 (Bernard Hellring, Newark, N.J., of counsel, Steven L. Bashwiner, Kirkland, Ellis, Hodson, Chaffetz & Masters, Chicage, Ill., on the brief).
 Nicholas H. Politan, Krieger, Chodash & Politan, Jersey City, N.J., argued for all other appellees.
 Before KALODNER, VAN DUSEN and ALDISERT, Circuit Judges.
 OPINION OF THE COURT
 VAN DUSEN, Circuit Judge.
 
 
 1
 These are appeals by the Postmaster General and Local postmasters (hereinafter sometimes referred to as the Post Office) from orders dismissing as moot suits asking for permanent injunctions against them. The preliminary injunctions were conditioned on the posting of a bond by the plaintiffs to cover damages incurred during the pendency of the injunction. The Post Office claims it is entitled to the bond and, since recovery is dependent on a final judgment on its behalf on the merits of the applications for final injunctions, that the present suits are not moot and should be allowed to go forward to trial. This court's jurisdiction is based on the Administrative Procedure Act, 5 U.S.C. 500 et seq. (1964) and 28 U.S.C. 1339 (1964).
 
 
 2
 On June 29, 1968, the Postmaster General published in the Federal Register a notice of proposed rulemaking dealing with the manner in which volume users eligible for the preferential fourth class rates[1] present material for mailing. 33 Fed.Reg. 9554 (1968). This action was taken pursuant to section 108(e) of the Postal Revenue and Salary Act, 39 U.S.C. 4554(e) (Supp. V, 1964), which provides that, in order to benefit from the special fourth class rates, those who mail in quantities of a thousand or more must do so in the manner prescribed by the Postmaster General.[2] After evaluating the views and recommendations submitted in response to the notice, the Postmaster General, on August 9, 1968, promulgated Postal Regulation 135.2(a)(6) to take effect in two stages. 33 Fed.Reg. 11359 (1968). During the first stage, commencing October 1, 1968, mailers would be required to sort and sack identical pieces mailed in quantities of 1000 or more daily, in accordance with the first three digits of the ZIP code. During the second stage, effective January 15, 1969, mailers who presented 1000 or more pieces in a single day would be required to include the full ZIP code on all pieces, both identical and non-identical, to sort and sack identical pieces by three-digit ZIP code areas, and to sort and sack non-identical pieces according to the state of destination.[3] Upon being notified by a number of mailers that they would be unable to complt by October 1, 1968, with the requirements becoming effective on that date, the Post Office announced that it would 'enter into an agreement to perform on a reimbursable basis separating and sacking services necessary for compliance with the regulation for a period of 60 days. * * *' 33 Fed.Reg. 14725 (1968).[4]
 
 
 3
 Appellees mail books for publishing houses, book stores, book wholesalers, schools, and libraries. Along with other bulk shippers of fourth-class material, they brought suits in various district courts seeking injunctive and declaratory relief against Postal Regulation 135.2(a)(6). Appellees' complaints generally included allegations that the promulgation of the postal regulation (1) exceeded the scope of the authority conferred on the Postmaster General by 3. U.S.C. 4554(e) (Supp. V, 1964), (2) was arbitrary and capricious, (3) was adopted without observance of procedures required by law, (4) was contrary to plaintiffs' constitutional rights, privileges, and immunities, and (5) was unsupported by 'substantial evidence for its necessity.' All appellees sought injunctive relief against the second phase of the regulation. Appellee American Book-Stratfored Press also sought relief against the first phase of the regulation. Preliminary injunctions were granted in the cases now before us, conditioned on the posting of security in amounts such as to insure the payment of 'such costs and damages as may be incurred or suffered by (the Post Office) if found to have been wrongfully enjoined or restrained.'[5] Security was posted pursuant to Rule 65(c) of the Federal Rules of Civil Procedure, which contains language substantially the same as that quoted.[6] The costs were associated with the sorting and sacking of appellees' mailings. In response to a Notice of Motion, the Judicial Panel on Multidistrict Litigation, on April 3, 1969, transferred 17 cases to the District Court for the District of New Jersey in time for pre-trial discovery.[7] In January 1969, the Post Office moved for dismissal of the complaints or for summary judgment. No action on this motion was taken. Subsequently, after meetings with the mailers, the Post Office announced a new rulemaking, with revised proposals designed to amend the challenged regulation.[8]
 
 
 4
 On October 16, 1969, the Post Office promulgated a new regulation which became effective on January 1, 1970. 34 Fed.Reg. 16542 (1969). The new provisions, which were not objected to by appellees, amended the regulation previously adopted to the extent that they imposed no duty upon the mailers to sort and sack non-identical pieces. However, the new regulation imposed the more stringent requirement that identical pieces shipped in mailings of 5000 or more be sorted and sacked in accordance with the full five digits of the ZIP code. Otherwise the regulations were similar. The new regulation became effective January 1, 1970. 34 Fed.Reg. 16542 (1969). Prior to the implementation of the amended proposals, the Post Office Department moved for an increase in the security furnished in seven of the pliance were outstripping the amounts cases, claiming that actual costs of comof the bonds. The district court finally denied the motions in November 1969 on the ground that the suits were moot. The court stated:
 
 
 5
 'I frankly can't see any basis, Mr. Alworth-- I am sorry-- for granting the government's motion to increase the amount of the bonds, in a situation as nebulous as this, absolutely nebulous. We have a new Regulation. The old one is gone. The book people are phasing in to conform to the new Regulation.'[9]
 
 
 6
 The United States District Court for the District of New Jersey ordered, upon the motion of the Government and the agreement of the mailers, that the preliminary injunctions be modified 'to the extent that the plaintiffs and defendant are permitted to take such action as is necessary to comply with Amended Regulation 135.2(a)(6). * * *' Then, on January 26, 1970, the Government moved for the entry of an order vacating all restraints which remained in effect as to the Post Office. On March 3, 1970, the district court ordered that all restraints then in effect be vacated.
 
 
 7
 Subsequently the plaintiffs moved for an order dismissing the actions without prejudice and without costs, and discharging the bonds. The Post Office Department opposed a dismissal of the actions until damages were assessed against the plaintiffs, but the court ordered that the actions be dismissed without prejudice and without costs, and that the bonds be vacated and discharged.[10] The district court noted the 'general principle that there can be no recovery of damages caused by a preliminary injunction unless final judgment is in favor of the party that has been enjoined' and said (N.T. 124a-125a):
 
 
 8
 'The cases are moot. The subject matter of those cases is gone. The old Regulation was challenged. The status quo was maintained until such time as there could be a hearing on the merits. A hearing on the merits never came about because the parties got together and worked out a new Regulation.
 
 
 9
 'In the absence of any proof, or even a suggestion of proof, that the injunctions were wrongfully issued, or that the defendants were wrongfully restrained, the motions for dismissal of the complaints will be granted and the bonds discharged.' The court entered orders to this effect. The Government appeals from these orders, as well as the orders denying the applications to increase the bonds.[11]
 
 
 10
 The two principal questions involved are these:
 
 
 11
 (1). Is the suit requesting a permanent injunction moot and therefore not justiciable, and
 
 
 12
 (2) If the case is not moot, is it reviewable in the federal courts?
 
 I.
 
 13
 We do not think this case is moot because if we dismiss this action the Post Office Department will in all likelihood institute suit against the sureties at some future time and, in any such action, the court will be faced with deciding the same issues that are in contention here. No liability can arise on an injunction bond unless there is a final judgment in favor of the party enjoined.[12] Therefore, in any independent action on the bond, the court will of necessity judge the merits of plaintiffs' demand for a permanent injunction.
 
 
 14
 Courts have long recognized the principle that a case is not moot if there is a reasonable likelihood that the parties or those in privity with them will be involved in a suit on the same issues in the future. The Supreme Court has held that the voluntary cessation of alegedly illegal conduct by the defendant will not moot a case if there is a reasonable expectation that the wrong will be repeated. Walling v. Helmerich & Payne, 323 U.S. 37, 43, 65 S.Ct. 11, 89 L.Ed. 29 (1944); Southern Pacific Terminal Co. v. Interstate Commerce Comm'n, 219 U.S. 498, 515-516, 31 S.Ct. 279, 55 L.Ed. 310 (1911); United States v. Trans-Missouri Freight Ass'n, 166 U.S. 290, 307-310, 17 S.Ct. 540, 41 L.Ed. 1007 (1897); see United States v. W.T. Grant Co., 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953).[13] Also, in United States v. Concentrated Phosphate Export Ass'n, 393 U.S. 199, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968), the Court held that changed conditions beyond the control of the parties will not moot a case if there is a reasonable possibility that the allegedly illegal activity will occur in the future.
 
 
 15
 Courts traditionally will not decide moot cases because considerations of judicial economy demand that only live controversies be decided, and because of the belief that there is less chance of a correct result if the parties are not genuinely adverse.[14] In a truly adversarial setting, it is reasoned, the parties will be sufficiently interested in the outcome of the case to ensure that all relevant arguments are presented to the court in a manner that will be most helpful to deciding the issues. Judicial economy will not result from dismissal of this action because judicial effort will be expended in the future on the same issues raised here in the context of an independent action on the bond. Also, the parties' substantial interest in the bond assures both their adversity and that they will be sufficiently concerned with the outcome of the suit for permanent injunctive relief to vigorously present the relevant arguments to the court.
 
 
 16
 In Meyers v. Jay Street Connecting Railroad, 288 F.2d 356 (2nd Cir.), cert. denied 368 U.S. 828, 82 S.Ct. 49, 7 L.Ed.2d 31 (1961), Meyers had obtained a preliminary injunction prohibiting the railroad from discontinuing service without first obtaining a certificate of public convenience and necessity from the ICC. The preliminary injunction was conditioned upon 'security approved by the court in the sum of $50,000. for the payment of such losses which the defendants may encounter or incur * * * until the case is tried should the defendants prevail in this action.' Id. at 358 n. 5. The preliminary injunction was appealed and affirmed. Then a final hearing on the merits was held and an order entered providing that the preliminary injunction 'was to remain in effect until the Commission's certificate permitting abandonment of the railroad 'became effective." Id. at 357-358. After an appeal was taken from this order, the Commission issued the certificate. Since the subject matter of the original complaint was removed, appellees argued that the appeal was moot. The court held that the presence of the bond prevented the case from being moot, stating that the determining factor in its decision was the likelihood that if the case were dismissed, the appellants would bring a suit against the sureties on the bond and raise the same questions. The court stated that 'to dismiss (this case) as moot would be formalistic to an extreme * * *.' Id. at 360.
 
 
 17
 Relying primarily on Janssen v. Shown, 53 F.2d 608 (9th Cir. 1931), appellees argue that the withdrawal of the original regulation constituted a settlement of the case by the parties and that the law is clear that in these circumstances courts of equity should not permit recovery on injunction bonds. However, in Janssen the parties moved jointly for dismissal of the case and the Court of Appeals described the dismissal as resulting from 'the voluntary and amicable agreement of the parties.' Id. at 612. There is no evidence of any agreement between the parties to this suit, either to accept the new regulation in place of the original or to seek dismissal of the action. In fact, the Government expressly denies that there has ever been an agreement. Flexibility is a concomitant of successful government. Administrators must feel free to change policies to more effectively carry out the agency's tasks. To infer an agreement each time an agency changes its policies in a way that favors those with whom it is dealing would discourage attempts at improvement and the exercise of flexibility.
 
 II.
 
 18
 We turn to the extent, if any, of judicial review of Post Office regulations concerning the mailing of fourth class material under preferential rates.
 
 
 19
 The Administrative Procedure Act states that administrative action is reviewable 'except so far as (1) statutes preclude judicial review or (2) agency action is by law committed to agency discretion.' 5 U.S.C. 701 (1964). In Abbott Laboratories v. Gardner, 387 U.S. 136, 140-141, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), the Court stated, '* * * a survey of our cases shows that judicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress. * * * In Rusk v. Cort, supra, 369 U.S. 367, at 379-380, 82 S.Ct. 787, at 794, 7 L.Ed.2d 809, the Court held that only upon a showing of 'clear and convincing' evidence of a contrary legislative intent should the courts restrict access to judicial review. * * *' We do not think there is 'clear and convincing' evidence of a Congressional intent to preclude judicial review in section 108(e) of the Postal Revenue Act of 1967. That statute provides that 'Articles may be mailed under this section in quantities of one thousand or more in a single mailing, as defined by the Postmaster General, only in the manner directed by him.'[15] This statute vests wide discretion in the Postmaster General and as a consequence, no court has the power to invalidate his directives on the grounds that they are not economical, efficient or reasonable. The scope of this court's review is quite limited in light of the APA section 10(e) and in light of the language of the statute, clearly vesting wide authority in the Postmaster General in the mailing of fourth-class material. However, we believe that within that narrow zone of reviewability over the Postmaster General's actions which this court does possess, a federal court can reverse actions which are so arbitrary and capricious as to amount to an abuse of discretion, or which are contrary to the Constitution. The cases cited by the Government are not inconsistent with this view. In a number of these cases the courts first indicate that the action of the administrator is unreviewable or that it is unnecessary to decide that question, but then the courts' language indicates that such action is in fact subject to reversal if outside the scope of the administrator's authority, arbitrary or capricious, or otherwise unconstitutional. See United States v. Carmack, 329 U.S. 230, 243 and 248, 67 S.Ct. 252, 91 L.Ed. 209 (1929); Knight Newspapers, Inc. v. United States, 395 F.2d 353, 359 (6th Cir. 1968); Sergeant v. Fudge, 238 F.2d 916, 917 (6th Cir. 1956).
 
 
 20
 In Doehla Greeting Cards, Inc. v. Summerfield, 97 U.S.App.D.C. 29, 227 F.2d 44 (1955), the court recognized that the Postmaster General's reformation of fourth-class rates would be illegal if it were 'not within the officer's statutory powers or, if within those powers, * * * if the powers or their exercise * * * (were) constitutionally void. See Larson v. Domestic and Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949).' Id. at 46. The court found expressly that there was no allegation that the statute was unconstitutional and that the Postmaster General had not acted arbitrarily or capriciously. Id. at 46, 47.[16]
 
 
 21
 In Panama Canal Co. v. Grace Line, Inc., 356 U.S. 309, 78 S.Ct. 752, 2 L.Ed.2d 788 (1958), relied on by the Government in support of its contention that there is no review of the administrative action in this case, the court held that it was without power to force a redetermination of an administrative decision to make an upward adjustment in the tolls, because 'initiation of a proceeding for the readjustment of the tolls of the Panama Canal is a matter that Congress has left to the discretion of the Panama Canal Co.' Id. at 317, 78 S.Ct. at 757. However, the court indicated that review would be available 'where the matter is peradventure clear, where the agency is clearly derelict in failing to act, where the inaction or action turns on a mistake of law.' Id. at 318, 78 S.Ct. at 757. The reason the Court did not permit review was because 'the present conflict rages over questions that at heart involve problems of statutory construction and cost accounting. * * * These are matters on which experts may disagree; they involve nice issues of judgment and choice * * * which require the exercise of informed discretion.' Id., at 317, 78 S.Ct. at 757.
 
 
 22
 We do not think the district court in this or any case should interfere in decisions of the Postmaster General which involve 'nice issues of judgment and choice.' However, plaintiffs have alleged that the Government has acted arbitrarily and capriciously, outside the scope of its power, or otherwise violated constitutional rights. Unless these allegations clearly involve matters left to the discretion of the Government, the plaintiffs are entitled to an opportunity to prove their claims.[17]
 
 
 23
 The orders of the district court dismissing these actions and vacating and discharging the bounds are hereby reversed and the case is remanded to that court for further proceedings in accordance with this opinion.
 
 
 24
 As pointed out above at pages 592-594, the Post Office also filed notices of appeal challenging district court orders of November 24, 1969, denying, on the ground of mootness, its motions to increase the amount of the bonds in seven of these actions. For the reasons set forth under I and II above, we have concluded that these suits are not moot and should proceed in the district court. For these reasons, such November 1969 district court orders will be set aside and, since these cases will be remanded, reconsideration of these motions by the district court shall be made in light of this opinion.
 
 
 
 [1]
 The definition and size and weight limitations of fourth class mail are stated in 39 U.S.C. 4551 and 4552 (1965). Certain material, including books, films, and phonograph recordings are entitled to special rates which, at the time in question, amounted to 10cents for the first pound and 5cents for each additional pound. 39 U.S.C. 4554(a) (1965)
 
 
 [2]
 Congress had previously granted authority to the Postmaster General to prescribe the manner in which bulk mailers were to present second-class material (newspapers and magazines) and third-class materials (advertising circulars). 39 U.S.C. 4363 and 4452(e) (Supp. V, 1964). Subsequently, the Postmaster General promulgated regulations pursuant to those statutes setting forth duties to be performed by those mailers. See 39 C.F.R. 126.3(b); 134.4(c) (Supp. 1968)
 
 
 [3]
 By shifting the performance of these tasks to the mailers, the Postmaster General was attempting to reduce the deficit incurred by the Post Office in mailing material at preferential fourth-class rates. According to the cost ascertainment study for 1967, this deficit amounted to $80,618,000 annually. H.R.Rept.1967, 90th Cong.2d Sess. at 5 (1968). When fully effective, section 135.2(a)(6) would decrease the deficit by $4,044,555 per annum according to the affidavit of W. M. McMillan, Assistant Postmaster-General, submitted with the Government's motion to dismiss the complaint of American Book-Stratford Press, Inc
 
 
 [4]
 The Assistant Postmaster General also promised that if any mailer litigating section 135.2(a)(6) paid the regular third or fourth-class rates under protest in lieu of complying with section 135.2(a)(6), the Department would make a refund of the difference in postage if it was ultimately determined that such mailer did not have to comply with section 135.2(2) (6). See affidavit attached to Government's motion to dismiss
 
 
 [5]
 This language was used by the United States District Court for the District of New Jersey in its orders in the cases of the nine appellees who instituted their actions in that court. National Book Company of Scranton, Haddon Craftsmen, and Harper & Row Publishers instituted their suits in the United States District Court for the Middle District of Pennsylvania. Regensteiner Publishing Enterprises instituted its action in the United States District Court for the Northern District of Illinois. The orders directed to these four companies concerning the posting of security contained language substantially similar to that used by the New Jersey court. The amounts of security posted by appellees are listed at note 9 infra
 
 
 [6]
 Rule 65(c) states in part that:
 '(c) SECURITY. No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. No such security shall be required of the United States or of an officer or agency thereof.'
 
 
 [7]
 In re Fourth Class Postage Regulations, 298 F.Supp. 1326 (Jud.Pan.Mult.Lit
 
 
 [8]
 The Post Office has never departed from its original position that Postal Regulation 135.2(a)(6), as promulgated on August 9, 1968, was fully authorized under 39 U.S.C. 4554(e) (Supp. V, 1964) and otherwise lawful
 
 
 [9]
 The amounts of the bonds posted originally in all 13 cases consolidated for this appeal are listed below, as well as the increases requested in the seven suits:
 Bond Originally Increase
 Posted Requested
American Bible Society ............................ $ 3,000. $ 25,000.
American Book-Stratford Press, Inc.................. 25,000. 300,000.
Montville Warehousing Co............................. 5,000. 5,000.
American Book Publishers, Inc........................ 5,000. 30,000.
Associated Book Service, Inc........................ 15,000. 45,000.
Scholastic Magazines, Inc........................... 15,000. 50,000.
The MacMillan Co.................................... 15,000. 55,000.
Wayne Warehousing Corp............................... 5,000. -------
Prentice Hall, Inc.................................. 10,000. -------
Harper & Row Publishers, Inc........................ 20,000. -------
 (bond originally ordered by United
 States District Court, Middle District
 of Pennsylvania, Docket No.
 69-24.)
Haddon Craftsmen, Inc............................... 30,000. -------
 (bond originally ordered by United
 States District Court, Middle District
 of Pennsylvania, Docket No.
 68-396.)
Regensteiner Publishing Enterprises,
 Inc. and Chicago Book Manufacturing,
 Inc.............................................. 50,000. -------
 (bond ordered in original action by
 United States District Court,
 Northern Distrsict of Illinois, Docket
 No. 68C 1945.)
National Book Company of Scranton .................. 10,000. -------
 (bond originally ordered by United
 States District Court, Middle District
 of Pennsylvania, Docket No.
 69-33.)
 
 
 [10]
 The district court dismissed the actions and discharged the bonds in those cases which originated in the District of New Jersey on March 9, 1970. Later, he took similar action, after satisfying himself of his power to so, in those cases transferred to him by the Panel on Multidistrict Litigation
 
 
 [11]
 Notices of appeal from the November 1969 orders denying the applications to increase the bonds were filed in the district court in the seven suits on January 21, 1970. The notices of appeal from the orders dismissing the suits for permanent injunctions and discharging the surety bonds were filed in the district court in all 13 suits on May 7, 1970. The various docket numbers in the New Jersey district court and in this court are as follows:
 U. S. Court of Court of
 District Appeals Appeals
 Court, Docket No. In Docket No. In
 District of Appeal From Appeal From
 New Jersey Denial of Dismissal
 Caption Docket No. Bond Incease of Action
American Bible Society .................... 46-69 18,811 19,008
American Book-Stratford Press ............ 941-68 18,812 19,009
Montville Warehousing Co................. 1120-68 18,813 19,010
American Book Publishers
 Council, Inc............................ 1194-68 18,814 19,011
Associated Book Service, Inc............. 1332-68 18,815 19,012
Scholastic Magaines, Inc................. 1407-68 18,816 19,013
The MacMillan Co......................... 1408-68 18,817 19,014
Wayne Warehousing Corp................... 1358-68 ---- 19,016
Prentice Hall, Inc........................ 102-69 ---- 19,017
Harper & Row Publishers .................. 469-69 ---- 19,018
Haddon Craftsmen, Inc..................... 470-69 ---- 19,019
Regensteiner Publishing Enterprises,
 Inc...................................... 472-69 ---- 19,020
National Book Company of
 Scranton ................................ 551-69 ---- 19,021
 
 
 [12]
 See Janssen v. Shown, 53 F.2d 608, 609 (9th Cir. 1931); Alabama Mills v. Mitchell, 159 F.Supp. 637, 639 (D.C.D.C.1958); Meeker v. Stuart, 188 F.Supp. 272, 276 (D.C.D.C.1960), aff'd 110 U.S.App.D.C. 161, 289 F.2d 902 (1961). We note that although both plaintiffs and defendants cite Lawrence v. St. Louis, San Francisco Railway Co., 278 U.S. 228, 233, 49 S.Ct. 106, 73 L.Ed. 282 (1929), for the proposition that there must be a final judgment after trial in favor of the party that has been enjoined, the Court in that case merely stated that 'the District Court could, in its discretion, refuse to assess the damages until it should, after the final hearing, have determined whether the plaintiff was entitled to a permanent injunction.' Id. at 233, 49 S.Ct. at 108. However, on this record, we adopt the rule that a final judgment is a prerequisite to recovery. This rule is consistent with the policy considerations behind the injunction bond. The requirement of security is rooted in the belief that a defendant deserves protection against a court order granted without the full deliberation a trial offers. That protection consists of a promise that the defendant will be reimbursed for losses suffered if it turns out that the order issued was erroneous in the sense that it would not have been issued if there had been the opportunity for full deliberation. See Note, Interlocutory Injunctions and the Injunction Bond, 73 Harv.L.Rev. 333, 336, 340 (1959)
 The propriety of the issuance of preliminary injunctions on the abbreviated records on which they are based does not establish plaintiffs' rights to injunctions after final hearings. Cf. Nelson v. Miller, 373 F.2d 474, 477 (3rd Cir. 1967). It is noted that no appeals were taken from the preliminary injunctions in these cases.
 
 
 [13]
 The Fifth Circuit rejected contentions that suits seeking desegregation of public facilities were moot. Although the defendant had closed the facilities, the court reasoned that the controversy should not be dismissed as moot since the facilities could be opened at any time. Anderson v. City of Albany, 321 F.2d 649 (5th Cir. 1963); City of Montgomery v. Gilmore, 277 F.2d 364 (5th Cir. 1960). The Court of Appeals for the District of Columbia recently refused to dismiss as moot an action brought by Muslim inmates to compel prison officials to accommodate the dietary laws of the Muslim faith. Although the prisoners had been transferred to another jail by the time of the appeal, the court reasoned that they might be returned to the prison at any time. Barnett v. Rodgers, 410 F.2d 995, 997 n. 1; see Pierce v. LaVallee, 293 F.2d 233, 234 (2nd Cir. 1961)
 
 
 [14]
 See Note, Cases Moot on Appeal: A Limit on the Judicial Power, 103 U.Pa.L.Rev. 772, 773-775 (1955)
 
 
 [15]
 Plaintiffs buttress their argument that Congress intended to give the Postmaster General unlimited discretion by pointing out that 39 U.S.C. 4363 (Supp. V) (1964) limits the power of the Postmaster General to prescribe the manner of mailing second class material. The statute states that 'The Postmaster General may require publishers and news agents to separate, make up, and address second class matter in such manner as he directs in accordance with a 5-digit ZIP code system.' As originally proposed, this section provided that 'publishers and news agents shall mail second-class mail in the manner directed by the Postmaster General. The Senate Committee on Post Office and Civil Service reported that 'It is the opinion of the committee that this language grants * * * authority too broad.' S.Rept.No.801, 90th Cong., 1st Sess., at 10 (1967), U.S.Code Cong. & Admin.News 1967, p. 2266. While this history convinces us that Congress intended to grant a wide measure of discretion to the Postmaster General in section 108(e), it does not convince us that it thereby intended to preclude judicial review
 
 
 [16]
 Summerfield v. Parcel Post Ass'n, Inc., 108 U.S.App.D.C. 125, 280 F.2d 673 (1960), is a similar case and relies 'squarely' on the decision in Doehla Greeting Cards. Id. at 675
 
 
 [17]
 We recognize that certain portions of the complaints allege differing burdens on different plaintiffs caused by the regulation due to their methods of doing business which present unreviewable 'issues of judgment and choice.' See, for example, paragraph 15 of the American Book-Stratford Press, Inc., complaint at 21a, paragraph 19 of the Harper & Row complaint at 680-681a, paragraphs 18 and 19 of the Haddon Craftsmen complaint at 722-723a, paragraph 21 of the National Book Company of Scranton complaint at 808a, paragraphs 18, 23 and 24 of the American Book Publishers Council, Inc., complaint at 298a-301a, paragraphs 15 and 16 of the Associated Book Service, Inc., complaint at 395-396a, paragraph 14 of Scholastic Magazines, Inc., complaint at 458a, paragraph 15 of Wayne Warehousing Corp. complaint at 579a, paragraph 14 of the Prentice Hall, Inc., complaint at 626a, paragraph 14 of MacMillan Company complaint at 518a, and paragraph 16 of the American Bible Society complaint at 136a