# UNIVERSITY OF TEXAS ET AL. v. CAMENISCH

No. 80–317.   Argued March 31, 1981—Decided April 29, 1981

STEWART, J., delivered the opinion for a unanimous Court. BURGER, C. J., filed a concurring opinion, *post*, p. 398.

*Lonny F. Zwiener*, Assistant Attorney General of Texas, argued the cause for petitioners. With him on the brief were *Mark White*, Attorney General, *John W. Fainter, Jr.*, First Assistant Attorney General, and *Richard E. Gray III*, Executive Assistant Attorney General.

*Stephen J. Pollak*, argued the cause for respondent. With him on the brief were *Ralph J. Moore, Jr., John Townsend Rich, Marc P. Charmatz, Seymour DuBow, Paul R. Friedman*, and *Charles Smith*.

*Peter Buscemi* argued the cause for the United States as *amicus curiae* urging affirmance. With him on the brief were *Solicitor General McCree, Acting Assistant Attorney General Turner*, and *Jessica Dunsay Silver*.*

JUSTICE STEWART delivered the opinion of the Court.

On March 1, 1978, Walter Camenisch, a deaf graduate student at the University of Texas, filed a complaint alleg-

---

*\*Robert E. Williams* and *Douglas S. McDowell* filed a brief for the Equal Employment Advisory Council as *amicus curiae* urging reversal.

Briefs of *amici curiae* urging affirmance were filed by *Robert L. Burgdorf, Jr.*, and *Susan Hirsch* for the American Coalition of Citizens with Disabilities et al.; by *Therese M. Wandling* for the Deaf Counseling, Advocacy and Referral Agency, Inc., et al.; by *Margaret K. Brooks* for the Legal Action Center of the City of New York, Inc.; and by *Kent Hull* and *Ronald M. Soskin* for the Michigan Rehabilitation Association et al.

Briefs of *amici curiae* were filed by *Marcia Robinson Lowry* and *Robert Levy* for the American Civil Liberties Union et al.; and by *R. Claire Guthrie* and *Sheldon Elliot Steinbach* for the American Council on Education et al.

ing that the University had violated § 504 of the Rehabilitation Act of 1973, 87 Stat. 394, as amended, 29 U. S. C. § 794 (1976 ed., Supp. III), which provides that "[n]o otherwise qualified handicapped individual in the United States . . . shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." The complaint alleged that the University received federal funds and that the University had discriminatorily refused to pay for a sign-language interpreter for Camenisch. The complaint asked the United States District Court for the Western District of Texas to grant declaratory relief and to "[p]reliminarily and permanently order defendants to appoint an interpreter for the plaintiff while he is a student in good standing at the defendant University."

The District Court applied the "Fifth Circuit standard for temporary relief to see if the injunction sought is appropriate." That standard, which was enunciated in *Canal Authority of Florida* v. *Callaway,* 489 F. 2d 567 (1974), requires that a federal district court consider four factors when deciding whether to grant a preliminary injunction: whether the plaintiff will be irreparably harmed if the injunction does not issue; whether the defendant will be harmed if the injunction does issue; whether the public interest will be served by the injunction; and whether the plaintiff is likely to prevail on the merits. Finding a possibility that Camenisch would be irreparably harmed in the absence of an injunction, and finding a substantial likelihood that Camenisch would prevail on the merits, the District Court granted a preliminary injunction requiring that the University pay for Camenisch's interpreter, but the court did so on the condition that Camenisch "post a security bond in the amount of *$3,000.00* pending the outcome of this litigation pursuant to Rule 65 (c). F. R. C. P." The District Court also ordered that the action be stayed "pending a final administrative determination on the merits, and that as a condition of preliminary injunctive relief, Plain-

tiff be required to initiate a complaint with HEW requesting the relief sought herein."

The Court of Appeals for the Fifth Circuit likewise applied the *Canal Authority* test, and found that the balance of hardships weighed in favor of granting an injunction and that Camenisch's claim would be successful on the merits. The Court of Appeals therefore affirmed the grant of the preliminary injunction. 616 F. 2d 127. The appellate court ruled, however, that Camenisch was not obligated to pursue any administrative remedy that the Department of Health, Education, and Welfare might provide, and it therefore vacated that part of the District Court's order staying the litigation pending administrative action.

By the time the Court of Appeals had acted, the University had obeyed the injunction by paying for Camenisch's interpreter, and Camenisch had been graduated. The Court of Appeals, however, rejected a suggestion that the case was therefore moot. The court said: "[A] justiciable issue remains: whose responsibility is it to pay for this interpreter?" *Id.*, at 130–131. We granted certiorari, 449 U. S. 950, and Camenisch has now raised the mootness issue before this Court.

The Court of Appeals correctly held that the case as a whole is not moot, since, as that court noted, it remains to be decided who should ultimately bear the cost of the interpreter. However, the issue before the Court of Appeals was not who should pay for the interpreter, but rather whether the District Court had abused its discretion in issuing a preliminary injunction requiring the University to pay for him. *Brown* v. *Chote,* 411 U. S. 452, 457; *Alabama* v. *United States,* 279 U. S. 229. The two issues are significantly different, since whether the preliminary injunction should have issued depended on the balance of factors listed in *Canal Authority,* while whether the University should ultimately bear the cost of the interpreter depends on a final resolution of the merits of Camenisch's case.

This, then, is simply another instance in which one issue in a case has become moot, but the case as a whole remains alive because other issues have not become moot. See, *e. g.,* *Powell* v. *McCormack,* 395 U. S. 486. In *Ammond* v. *McGahn,* 532 F. 2d 325 (CA3 1976), for instance, the issue of preliminary injunctive relief became moot, but an issue of damages remained. The court said: "Though the entire case is not moot, the question remains whether the issue of the appropriateness of injunctive relief is moot. If the parties lack a legally cognizable interest in the determination whether the preliminary injunction was properly granted, the sole question before us on this appeal, then we must vacate the district court's order and remand the case for consideration of the remaining issues." *Id.,* at 328. Because the only issue presently before us—the correctness of the decision to grant a preliminary injunction—is moot, the judgment of the Court of Appeals must be vacated and the case must be remanded to the District Court for trial on the merits. See *Brown* v. *Chote, supra.*

Since Camenisch's likelihood of success on the merits was one of the factors the District Court and the Court of Appeals considered in granting Camenisch a preliminary injunction, it might be suggested that their decisions were tantamount to decisions on the underlying merits and thus that the preliminary-injunction issue is not truly moot. It may be that this was the reasoning of the Court of Appeals when it described its conclusion that the case was not moot as "simply another way of stating the traditional rule that issues raised by an expired injunction are not moot if one party was required to post an injunction bond." 616 F. 2d, at 131. This reasoning fails, however, because it improperly equates "likelihood of success" with "success," and what is more important, because it ignores the significant procedural differences between preliminary and permanent injunctions.

The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party thus is not required to prove his case in full at a preliminary-injunction hearing, *Progress Development Corp.* v. *Mitchell,* 286 F. 2d 222 (CA7 1961), and the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits, *Industrial Bank of Washington* v. *Tobriner,* 132 U. S. App. D. C. 51, 54, 405 F. 2d 1321, 1324 (1968); *Hamilton Watch Co.* v. *Benrus Watch Co.,* 206 F. 2d 738, 742 (CA2 1953). In light of these considerations, it is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits. *E. g., Brown* v. *Chote, supra; Gellman* v. *Maryland,* 538 F. 2d 603 (CA4 1976); *Santiago* v. *Corporacion de Renovacion Urbana y Vivienda de Puerto Rico,* 453 F. 2d 794 (CA1 1972).

Should an expedited decision on the merits be appropriate, Rule 65 (a)(2) of the Federal Rules of Civil Procedure provides a means of securing one. That Rule permits a court to "order the trial of the action on the merits to be advanced and consolidated with the hearing of the application." Before such an order may issue, however, the courts have commonly required that "the parties should normally receive clear and unambiguous notice [of the court's intent to consolidate the trial and the hearing] either before the hearing commences or at a time which will still afford the parties a full opportunity to present their respective cases." *Pughsley* v. *3750 Lake Shore Drive Cooperative Bldg.,* 463 F. 2d 1055, 1057 (CA7 1972); *Nationwide Amusements, Inc.* v. *Nattin,* 452 F. 2d 651 (CA4 1971). This procedure was not followed here.

In short, where a federal district court has granted a preliminary injunction, the parties generally will have had the benefit neither of a full opportunity to present their cases nor of a final judicial decision based on the actual merits of the controversy. Thus when the injunctive aspects of a case become moot on appeal of a preliminary injunction, any issue preserved by an injunction bond can generally not be resolved on appeal, but must be resolved in a trial on the merits. Where, by contrast, a federal district court has granted a permanent injunction, the parties will already have had their trial on the merits, and, even if the case would otherwise be moot, a determination can be had on appeal of the correctness of the trial court's decision on the merits, since the case has been saved from mootness by the injunction bond.

The principle underlying this basic distinction, although sometimes honored in the breach,[1] is reflected in the relevant precedents. For instance, in this Court's decision in *Liner* v. *Jafco, Inc.*, 375 U. S. 301, a decision often cited for the proposition that an injunction bond prevents a case from becoming moot, the injunction was permanent, not preliminary. The District Court there had thus reached a final decision on the merits.

*American Bible Society* v. *Blount,* 446 F. 2d 588 (CA3 1971), illuminates the distinction from a different angle. In that case, the plaintiffs had secured a preliminary injunction and had posted an injunction bond. When the issue of injunctive relief became moot, the Court of Appeals held that the case as a whole was not moot, since the defendant would "in all likelihood institute suit against the sureties at some future time and, in any such action, the court [would] be faced with deciding the same issues that are in contention

---

[1] See, *e. g., Bright* v. *Nunn,* 448 F. 2d 245, 247, n. 1 (CA6 1971); but see 11 C. Wright & A. Miller, Federal Practice and Procedure § 2950, pp. 492–493 (1973).

here." *Id.,* at 594. The appellate court ruled that liability on the injunction bond could not arise until there was a final judgment in favor of the defendant: "This rule is consistent with the policy considerations behind the injunction bond. The requirement of security is rooted in the belief that a defendant deserves protection against a court order granted without the full deliberation a trial offers." *Id.,* at 595, n. 12. The court therefore remanded the case to the trial court, where such "full deliberation" could take place.

In *Klein* v. *Califano,* 586 F. 2d 250 (CA3 1978), the same United States Court of Appeals, sitting en banc, was confronted with a different situation involving a moot injunction which was survived by a possible claim for recoupment on a bond. The court "recognize[d] that part of the rationale of *American Bible Society* was the policy of the Rule 65 security bond to protect defendants from the consequences of temporary restraining orders granted without opportunity for full deliberation of the merits of a dispute." *Id.,* at 256. Because the District Court in *Klein* had "had such an opportunity to assess the merits of the complaint and [had] granted summary judgment and a permanent injunction," *ibid.,* the Court of Appeals reached the merits of the case.[2]

The present case is replete with circumstances indicating the necessity for a full trial on the merits in the *nisi prius*

---

[2] The Court of Appeals in the present case mistakenly believed that *Kinnett Dairies* v. *Farrow,* 580 F. 2d 1260 (CA5 1978), stands for a contrary principle. In that case, the question of mootness arose because the defendant's solicitation of bids—which had been the subject of the District Court's preliminary injunction—had run its course. The Court of Appeals said: "[T]he history of this controversy reveals the reasonable expectation—indeed, the near certainty—that the act complained of will be repeated. This case is a paradigm of the situation 'capable of repetition yet evading review.'" *Id.,* at 1266 (footnote omitted). The court determined that the plaintiff could not win on the merits, and that the issuance of a preliminary injunction had, therefore, been erroneous. But the court did not say what it would have done had it not concluded that the case was capable of repetition yet avoiding review.

court, where a preliminary injunction has become moot and an injunction bond has been issued. The proceedings here bear the marks of the haste characteristic of a request for a preliminary injunction: the parties have relied on a short stipulation of facts, and even the legal theories on which the University has relied have seemed to change from one level of the proceeding to another. The District Court and the Court of Appeals both properly based their decisions not on the ultimate merits of Camenisch's case but rather on the balance of the *Canal Authority* factors. While it is true that some of the Court of Appeals' language suggests a conclusion that Camenisch would win on the merits, the court certainly did not hold that the standards for a summary judgment had been met.

In sum, the question whether a preliminary injunction should have been issued here is moot, because the terms of the injunction, as modified by the Court of Appeals, have been fully and irrevocably carried out. The question whether the University must pay for the interpreter remains for trial on the merits. Until such a trial has taken place, it would be inappropriate for this Court to intimate any view on the merits of the lawsuit.

The judgment of the Court of Appeals is therefore vacated, and the case is remanded to the District Court for further proceedings consistent with this opinion.

*It is so ordered.*

CHIEF JUSTICE BURGER, concurring.

I join the Court's opinion, but I consider it important to emphasize several aspects of the case, especially as to the regulations.

It is undisputed that the University stood willing to permit respondent to have a sign-language interpreter present in the classroom at respondent's expense, and in fact had allowed that for some time prior to the filing of this lawsuit. It is also undisputed that the University's refusal to pay for an

interpreter was based solely on the fact that respondent did not meet the University's established income criteria for financial assistance to graduate students.*

The Court's opinion, of course, is not to be read as intimating that respondent has any likelihood of success on the merits of his claim. The Court holds no more than that, since there has been no trial, respondent has a right to present evidence in support of his claim. The trial court must, among other things, decide whether the federal regulations at issue, which go beyond the carefully worded *nondiscrimination* provision of § 504, exceed the powers of the Secretary under § 504. The Secretary has no authority to rewrite the statutory scheme by means of regulations. *Southeastern Community College* v. *Davis,* 442 U. S. 397, 410 (1979); see also *Pennhurst State School & Hospital* v. *Halderman, ante,* at 17 ("[I]f Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously").

---

*Respondent and his wife, who have no children, had a combined gross income in excess of $23,000 per year while he was enrolled as a student. Stipulation of Facts, App. 31. At oral argument, respondent asserted that even a $100,000 annual income would not affect his right to an interpreter at public expense.

The University advised respondent that its policy was to pay for interpreter services when the services were not available from other agencies such as the Texas Rehabilitation Commission and the Texas Commission for the Deaf, provided that "such assistance will be based on a reasonable interpretation of financial need on an individual basis, using guidelines already in effect for Federal and other financial assistance." According to those guidelines, respondent had zero financial need. *Id.,* at 33.