**SIERRA CLUB, Appellant,**

v.

**UNITED STATES ARMY CORPS OF ENGINEERS; John O. Marsh, Jr. as Secretary of the Army; Lt. General Joseph K. Bratton as Chief of Engineers of the United States Army Corps of Engineers, and Naples Terminal Company, a corporation, Appellees.**

**No. 84–1960.**

United States Court of Appeals,
Eighth Circuit.

Submitted April 10, 1985.

Decided Aug. 28, 1985.

Rehearing Denied Oct. 1, 1985.

Richard J. Metzger, Chicago, Ill., for appellant.

Maxine I. Lipeles, St. Louis, Mo., for appellees.

Before BRIGHT, Senior Circuit Judge, and ARNOLD and FAGG, Circuit Judges.

BRIGHT, Senior Circuit Judge.

Sierra Club appeals from the district court's order denying its motion for a preliminary injunction. Sierra Club seeks to prohibit the use of certain barge fleeting permits issued by the United States Army Corps of Engineers (Corps) to Naples Terminal Company (NTC) until the district court rules on the merits of Sierra Club's claim that, in issuing the permits, the Corps failed to comply with section 102 of the National Environmental Policy Act of 1969, (NEPA), 42 U.S.C. § 4332, and the Corps' own regulations. For the reasons set forth below, we vacate the district court's order denying a preliminary injunction, and remand this action with directions to hold an expedited hearing on the merits of Sierra Club's claim and enter a final judgment.

## I. BACKGROUND.

The underlying dispute in this matter arose when NTC applied to the Corps for permits under section 10 of the Rivers and Harbors Appropriation Act of 1899, 33 U.S.C. § 403, to construct facilities to fleet a large number of barges on a stretch of the Illinois River in the vicinity of Naples, Illinois. NTC operates a terminal at Naples which includes facilities for storing, transferring and transporting agricultural commodities and other products. Barge fleeting is the temporary parking of barges along the riverbank while they are waiting to be loaded or unloaded or towed. Fleeted

barges may be moored either to man-made structures set in the river or shore, or to natural objects such as trees.

Since 1976, NTC has had a permit from the Corps to fleet up to thirty barges (apparently using man-made structures on shore) over one mile of the river adjacent to its terminal. NTC has, in addition, engaged in the practice of mooring an unspecified number of additional barges by tying them to trees. To date, the Corps has not required NTC to obtain permits for the fleeting of barges when they are tied to trees.

The permits at issue here authorize NTC to install "deadmen" for use in mooring up to 353 barges along roughly six miles of the river. Deadmen are concrete blocks buried in the ground, from which an anchor or cable line is extended to a fleeted barge. The portion of the river directly affected by NTC's project is situated south of Meredosia, Illinois, between the Meredosia National Wildlife Refuge and the Pike County Conservation District. According to Sierra Club, this environmentally sensitive stretch of river has a diverse and abundant fish community, including several game species. Important mussel beds inhabit the river bottom, and the riverine environment supports a wide variety of vertebrates, including a number of bird species that are on the Illinois state endangered and threatened species list. Sierra Club notes that the affected portion of the river receives a great deal of recreational use for fishing, hunting, boating, sightseeing, and wildlife observation.

■ Before granting the permits, the Corps prepared an environmental assessment (EA), discussing the potential environmental effects of NTC's proposed project.[1] The Corps concluded that issuance of the permits, with appropriate conditions and restrictions, would not significantly affect the quality of the human environment, and proceeded without preparing a more comprehensive environmental impact statement (EIS).[2]

The United States Fish and Wildlife Service, the Illinois Department of Conservation, and the United States Environmental Protection Agency submitted letters objecting to issuance of the permits on the basis of the EA. The agencies pointed to certain shortcomings and omissions in the document and recommended, in essence, that the proposed fleeting not be authorized until potentially adverse environmental effects were more thoroughly investigated.

The Corps nevertheless issued the barge fleeting permits without further evaluation on September 27, 1983. Thereafter, Sierra Club filed the present action for declaratory and injunctive relief alleging, *inter alia*, that the Corps had violated section 102(2)(C) of NEPA by granting the permits without preparing a detailed EIS despite indications that NTC's project would have a significant impact on the environment, and had violated section 102(2)(E) of NEPA by issuing the permits without adequately

1. In addition to the EA, the Corps also prepared a biological assessment, focusing on the potential impact of the project on federally protected endangered species in the area. (The biological assessment did not discuss the impact of the project on other species.) The Corps concluded that the permits would have no effect on certain bat and mussel species thought to be in the area and, with the imposition of certain permit conditions, would not jeopardize bald eagles in the area.

2. Section 102(2)(C) of NEPA requires federal agencies to prepare a detailed EIS for all "major federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). When a proposed federal action may have some environmental impact, but it is not reasonable to anticipate that the impact will be "significant," no EIS is necessary. *See River Road Alliance, Inc. v. Corps of Engineers,* 764 F.2d 445, 449 (7th Cir.1985). *See also Minnesota Public Interest Research Group v. Butz,* 498 F.2d 1314, 1320–22 (8th Cir.1974) (en banc). To determine whether a proposed action triggers the EIS requirement, federal agencies frequently prepare a shorter, less comprehensive EA. Under Corps regulations, if an EA and other pertinent data obtained from corroborating federal agencies, the interested public, and the applicant show that a proposed action will not have significant environmental consequences, the Corps enters a finding of no significant impact (FONSI), and proceeds without issuing an EIS. *See* 33 C.F.R. § 230.9 and App. B. 8. c.

studying, developing, and describing appropriate alternatives to the proposed action. 42 U.S.C. §§ 4332(2)(C) and (E).[3] Sierra Club filed a motion for summary judgment which the district court denied on May 8, 1984. While that motion was pending, Sierra Club filed the present request for preliminary injunctive relief.[4] Following an evidentiary hearing, the district court entered an order denying the motion for a temporary injunction on June 7, 1984. This appeal followed.

## II. DISCUSSION.

In *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109 (8th Cir.1981) (en banc), this court enunciated four factors district courts should weigh in considering requests for preliminary injunctive relief: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will have on other parties litigant; (3) the possibility that movant will succeed on the merits; and (4) the public interest." *Id.* at 113. In the present case, the district court evaluated Sierra Club's motion for preliminary injunctive relief under the *Dataphase* factors—albeit in a somewhat conclusory fashion—and held that Sierra Club had failed to carry its burden of satisfying any of those factors.

■ Our review of a grant or denial of preliminary relief is limited to determining whether the district court abused its discretion. *Harris v. United States*, 745 F.2d

535, 536 (8th Cir.1984); *Roberts v. Van Buren Public Schools*, 731 F.2d 523, 526 (8th Cir.1984). Moreover, we are bound by the district court's findings of fact unless they are clearly erroneous. *See St. Jude Medical, Inc. v. CarboMedics, Inc.*, 764 F.2d 500, 501 (8th Cir.1985) (quoting *Edudata Corp. v. Scientific Computers, Inc.*, 746 F.2d 429, 430 (8th Cir.1984)). The scope of our review in this case is therefore circumscribed, yet it must be based on careful consideration of the record before the court.

In the present case, however, the parties vigorously dispute the nature of the record properly before the district court and therefore the record properly before this court for review. Indeed, the parties have submitted two separate versions of the record on appeal. According to appellees, Sierra Club is attempting to litigate this appeal on the basis of documents it never put into evidence in the injunction proceedings. Appellees ask that these documents be stricken from the record on appeal. The challenged documents comprise significant portions of the administrative record on which the Corps based its decision to grant the permits, and include the EA, as well as the letters from various public agencies objecting to issuance of the permits on the basis of the information in the EA.[5]

Sierra Club maintains that, although it did not formally introduce the documents into evidence at the injunction hearing, it

---

**3.** Sierra Club also alleges that the Corps violated its own NEPA-implementing regulations, including the regulation requiring it to give "great weight" to the views of federal and state conservation agencies. 33 C.F.R. § 320.4(c).

**4.** Appellees argue that the present appeal is moot because Sierra Club asked for a temporary injunction only until the district court "rules upon Plaintiffs' pending motion for summary judgment," and the district court has already denied the motion for summary judgment. We reject this contention because we believe the parties clearly understood that Sierra Club sought to enjoin any action on the permits until the district court ruled on the merits of its claims. Moreover, even if the appeal were dismissed as moot, Sierra Club would simply file a new motion for temporary injunctive relief,

which would presumably return to this court in the same posture.

**5.** It is undisputed that the entire administrative record was not before the district court. Sierra Club asserts that it submitted "every pertinent portion of the Corps' record," and that appellees made no attempt to offer any further materials from the administrative files. Instead, appellees submitted various affidavits and depositions in support of their position. The confused state of the record is illustrated by the fact that several of the documents appellees ask the court to strike from the record on the ground that Sierra Club never properly introduced them into evidence were, in fact, also submitted to the district court by appellees as exhibits attached to depositions.

submitted them to the district court and authenticated most of the documents through the testimony of the Corps' employee who was responsible for the administrative inquiry. Sierra Club further maintains that the district court acknowledged in its decision that the documents were properly before it,[6] and yet the court failed to test the propriety of the Corps' decision against the agency record, instead conducting its own *de novo* trial. In particular, Sierra Club emphasizes that, because *Dataphase* requires the district court to consider the likelihood of success on the merits in determining whether to issue a preliminary injunction, and because the merits of an agency's decision can only be defended on the basis of the existing administrative record, the district court erred in ignoring the administrative materials filed by Sierra Club.

 Having reviewed the various allegations and contentions of the parties, we believe that substantial portions of the administrative record were available to the district court, contained material relevant to the claim for interlocutory relief, and should have been considered by the court in ruling on the motion for a preliminary injunction. We are, however, unable to determine from the district court's memorandum opinion whether or not it actually considered any of the administrative materials submitted by Sierra Club. Nor are we prepared to say that failure to consider that material would have been harmless error in this instance. We are mindful that findings of fact and conclusions of law made by a court in granting or denying a preliminary injunction are not binding at the trial on the merits. *University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981). Nevertheless, because the confused state of the record makes meaningful review of the district court's order impossible, and because of the lapse of time since Sierra Club initially brought this matter before the district court, we believe the best course at this juncture is to vacate the district court's order and remand this action with directions to hold an expedited and final hearing on the merits of Sierra Club's claims.

Sierra Club's primary contention is that it was unreasonable for the Corps to conclude that NTC's project would not significantly affect the quality of the human environment and therefore an EIS need not be prepared. *See Minnesota Public Interest Research Group v. Butz*, 498 F.2d 1314, 1320 (8th Cir.1974) (en banc) (judicial review of an agency's determination not to prepare an impact statement should be measured by its reasonableness in the circumstances). On remand, the district court must, of course, determine the merits of Sierra Club's claims by focusing on the administrative record on which the agency based its decision, not on some new record compiled initially in the reviewing court. *See, e.g., Camp v. Pitts*, 411 U.S. 138, 141–42, 93 S.Ct. 1241, 1243–44, 36 L.Ed.2d 106 (1973); *Corning Savings & Loan Association v. Federal Home Loan Bank Board*, 736 F.2d 479, 480 (8th Cir.1984). The existing administrative record may be " 'supplemented, if necessary, by affidavits, depositions, or other proof of an explanatory nature.' " *Arkla Exploration Co. v. Texas Oil & Gas Corp.*, 734 F.2d 347, 357 (8th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 905, 83 L.Ed.2d 920 (1985) (quoting *Independent Meat Packers Association v. Butz*, 526 F.2d 228, 239 (8th Cir.1975), *cert. denied,* 424 U.S. 966, 96 S.Ct. 1461, 47 L.Ed.2d 733 (1976)). Any new materials submitted should, however, be merely explanatory of the original record and should contain no new rationalizations for the agency's decision. *See Environmental Defense Fund, Inc. v. Costle*, 657 F.2d 275, 284–85 (D.C.Cir.1981).

---

**6.** Sierra Club relies on the district court's statement that "[i]n light of the incomplete administrative record submitted by plaintiff, the plaintiff has failed to prove that possibly adverse environmental consequences were not considered by the Corps." (Finding of Fact No. 8.) The district court also stated that "[t]he Corps' entire administrative record in this matter has not yet been put before the court." (Finding of Fact No. 13.)

Accordingly, we vacate the district court's order and remand with directions to conduct an expedited hearing on the merits, and to enter a final judgment granting or denying, as may be appropriate, injunctive and declaratory relief.