**UNITED STATES of America, Plaintiff,**

v.

**Marjorie A. STANEC, et al., Defendants.**

**No. 4:94CV756 JCH.**

United States District Court,
E.D. Missouri,
Eastern Division.

Oct. 27, 1995.

Eric T. Tolen, Asst. U.S. Attorney, Office of U.S. Attorney, St. Louis, MO, Barbara A. Burr, Thomas J. Keary, U.S. Department of Justice, Washington, DC, for United States of America.

Larry M. Bauer, Sonnenschein and Nath, St. Louis, MO, John G. Doyen, Dean Ramon Gallego, Brinker and Doyen, St. Louis, MO, Marjorie A. Stanec, St. Louis, MO, for Marjorie A. Stanec.

Steven M. Davis, Sheehan and Davis, Arnold, MO, Daniel E. Wilke, Wilke and Wilke, St. Louis, MO, for Andy Thielmeier.

**323**

Larry M. Bauer, Sonnenschein and Nath, St. Louis, MO, for Vince F. Stanec.

### MEMORANDUM AND ORDER

HAMILTON, Chief Judge.

This matter is before the Court on "Defendants' Motion to Prohibit Publication of Notice of this Lawsuit."

■ Plaintiff, through the United States Department of Justice, conducted an investigation of the rental practices of apartments owned and managed by Defendants in order to evaluate compliance with the Fair Housing Act. Based on the information gathered through this investigation, Plaintiff filed this lawsuit alleging that, by using testers at the Forder Road Apartments, it found that African–Americans seeking housing from Defendants are subjected to treatment different from that afforded white persons. Plaintiff filed this action on April 18, 1994 pursuant to the authority vested in the Attorney General by 42 U.S.C. § 3614(a), claiming that "[p]ersons who have been the victims of the defendants' discriminatory practices are aggrieved persons as defined in 42 U.S.C. § 3602(i)," and requesting the Court to award damages to those persons. The Complaint does not specifically name any aggrieved persons, but Plaintiff alleges that Defendants engaged in a pattern or practice of discrimination based on race.[1] The Complaint is based on information gathered by testers, "individuals who, without an intent to rent or purchase a home or apartment, pose as renters or purchasers for the purpose of collecting evidence of unlawful ... practices." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373, 102 S.Ct. 1114, 1121, 71 L.Ed.2d 214 (1982). Plaintiff contends that although testing is an effective means of ferreting out discriminatory housing practices, it is through discovery and subsequent investigation that bona fide victims of discriminatory practices are identified.

On April 13, 1995 Plaintiff filed a Notice of Intention to Publish Notice of This Lawsuit, contending that such a notice is an effective means of discovering aggrieved persons. On May 19, 1995 Defendants filed a Motion in Opposition, arguing that publicizing notice of the lawsuit will unfairly cause irreparable harm to Defendants' reputations in their respective social and business arenas.

Defendants' Motion in Opposition relies on two separate theories. First, Defendants argue that the Court can prohibit publication by exercising its inherent authority to prevent abuses of the judicial process. Plaintiff responds by noting that Defendants have not pointed to any abuse of the judicial process in this case. The defendants in a similar housing discrimination matter likewise argued that the court should use its inherent authority to prohibit publication of notice of the lawsuit, *United States v. Telegraph Park Partnership*, CA No. 4:94–CV–758 LOD (E.D.Mo.1994). The court in that case found "nothing to indicate ... that the government's representatives ... acted in bad faith. To the contrary, its filing an intent to publish before actually publishing notice is evidence of good faith." *Id.*

This Court agrees that Plaintiff is not abusing the judicial process. Rather, by filing a notice of intention to publish, Plaintiff evidences its good faith. Therefore, the Court declines to exercise any inherent authority to prohibit publication of notice of the lawsuit.

Both parties acknowledge trial court rulings finding that the court does not have the authority to prohibit the Government from publishing such a notice. *See* id. at *6 (concluding that the court does not have the power to prohibit the Government from publishing a similar notice); *United States v.*

---

**1.** Although the Eighth Circuit has not decided the issue, the addition of aggrieved persons after a complaint has been filed in pattern or practice lawsuits has been permitted elsewhere. *See United States v. Balistrieri*, 981 F.2d 916, 935 (7th Cir.1992), cert. denied, —— U.S. ——, 114 S.Ct. 58, 126 L.Ed.2d 28 (1993) (stating that "[t]here was no reason to allow the government to seek damages only for aggrieved persons it knew about at the time it filed its complaint. ... [N]othing in the Complaint supports the conclusion that the pattern or practice alleged was limited [to the discriminatory acts directed toward testers]). Similarly, the Government's complaint in this case is based on the allegation of a discriminatory practice or pattern and is fundamentally identical to the described government complaint in *Balistrieri*.

**324**

*McLimore,* CA No. IP94–1244–C (S.D.Ind. 1994) (holding, without memorandum, that the court lacks authority to restrain the Government from publishing notice). Moreover, other courts have apparently encouraged such publications in similar housing discrimination suits. *See United States v. Kings Pointe Apartments,* CA No. 92–CV–77305–DT, Transcript of proceedings at 27–30 (E.D.Mich. June 8, 1994).

Defendants also urge the Court to enjoin publication of the notice pursuant to Fed. R.Civ.P. 65. Plaintiff argues that the Defendants have not met their burden of establishing the necessary criteria for the Court to issue such an injunction.[2]

 "In shaping equity decrees, the trial court is vested with broad discretionary power...." *Lemon v. Kurtzman,* 411 U.S. 192, 200, 93 S.Ct. 1463, 1469, 36 L.Ed.2d 151 (1973); *Swann v. Charlotte–Mecklenburg Board of Education,* 402 U.S. 1, 15, 27 n. 10, 91 S.Ct. 1267, 1275, 1282 n. 10, 28 L.Ed.2d 554 (1971). The traditional test for issuance of injunctive relief requires the Court to consider (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and any injury that granting the injunction will inflict on the other parties litigant; and (3) the public interest. *Dataphase Systems, Inc. v. CL Systems, Inc.,* 640 F.2d 109, 113 (8th Cir.1981); *Peabody Holding Co., Inc. v. Costain Group PLC,* 813 F.Supp. 1402 (E.D.Mo.1993); *Gilleo v. City of Ladue,* 774 F.Supp. 1564, 1566 (E.D.Mo.1991). The Court must also determine the movant's success on the merits. *Amoco Production Co. v. Village of Gambell,* 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 1404 n. 12, 94 L.Ed.2d 542 (1987); *University of Texas v. Camenisch,* 451 U.S. 390, 392, 101

S.Ct. 1830, 1832, 68 L.Ed.2d 175 (1981); *Peabody,* 813 F.Supp. at 1414; *Gilleo,* 774 F.Supp. at 1566.

Defendants Mr. and Mrs. Stanec argue that in light of their involvement among various community organizations and their many friends and business associates, publication of the proposed notice will cause irreparable harm to their reputations, both socially and professionally. For similar reasons, Defendant Thielemier argues that his reputation will be irreparably harmed if publication is permitted. Defendants further argue that the publication of this notice, with its language indicating that victims of housing discrimination may be entitled to receive monetary damages, invariably will lead to an open invitation for false, fraudulent, or fabricated claims against Defendants.

Plaintiff contends that Defendants' arguments are unjustified, pointing out that the proposed notice repeats the substance of Plaintiff's claims against Defendants, which are already a matter of public record. Plaintiff asserts this case is unlike *Telegraph Park,* because Defendants will have ample opportunity to depose any persons the United States identifies as aggrieved persons.[3] Plaintiff further notes that it is at this time that any concerns Defendants might have regarding fraudulent claims can be addressed.

While Defendants may in fact suffer some harm to their reputation, it is unlikely that the harm is irreparable. The proposed notice is carefully worded, emphasizing that the government's complaint is an "allegation," and that "no finding has been made by any court as to whether the defendants have illegally discriminated." [4]

---

2. Plaintiff also notes that Defendants have not specifically moved the Court to enjoin the publication. Although not specifically stated, this is in essence the relief Defendants request. Therefore, the Court will analyze the remaining issues according to the appropriate standard for the issuance of injunctive relief.

3. "In light of the time frame involved," Magistrate Judge Davis refused to allow the Government to use "any fruits of such publication," *Telegraph Park,* (March 24, 1995 Order at 4). The Court does not find similar time constraints in the present case. Trial is three months away.

Both the Government and Defendants will have adequate time to engage in the discovery of any potential victims.

4. The proposed notice includes a photograph of the Forder Road Apartments and states that the United States filed a complaint against the owners and managers, charging them with racial discrimination in violation of the Fair Housing Act. 42 U.S.C. §§ 3601–3619. The notice provides that the "United States seeks to locate persons who have applied for or otherwise inquired about housing at these apartments and who may have been discriminated against be-

In establishing the second prong of the traditional test for injunctive relief, Defendants argue that any hardships suffered by them from publication of the notice far outweigh any hardships Plaintiff would encounter if the notice were not published. Defendants suggest that Plaintiff's motive for publishing the notice is a "fishing expedition" to seek out aggrieved individuals without evidence that such individuals exist. Plaintiff maintains that publication of the notice is in no way merely a "fishing expedition" and notes that during discovery proceedings, Plaintiff, in an attempt to identify potential aggrieved persons, has requested and reviewed rental records maintained by Defendants. Defendants, however, did not maintain any sign-in sheets, waiting lists, or other records of persons who inquired about apartments but were turned away. Therefore, Plaintiff argues, it must use the alternative method of publishing notice to identify and locate potential aggrieved persons.

The Complaint is based upon the allegation that Defendants engaged in a pattern or practice of discrimination based on race. (First Amended Complaint, para. 10). The phrase "pattern or practice" suggests ongoing discrimination. It is therefore reasonable for Plaintiff to attempt to identify and locate potential aggrieved persons in an effort to determine whether or not Defendants actually engaged in a pattern or practice of discrimination.

In view of the foregoing, it is not apparent that the alleged hardships suffered by Defendants outweigh the hardship suffered by Plaintiff if injunctive relief were granted.

Additionally, Defendants argue that the public interest is best served by prohibiting publication of the notice because the public interest weighs in favor of protecting the reputations of citizens who have not been found guilty of any violation of the law. Defendants further argue that any public interest Plaintiff may have in eradicating racial discrimination in housing arises only if De-

fendants are found liable for racial discrimination.

Plaintiff argues that publication of notice is a necessary tool to aid the eradication of housing discrimination, and therefore serves an important public interest. Plaintiff also notes that the Court may closely monitor the publication process to ensure that the public interest is served, while protecting the reputations of the Defendants.

The Court agrees with Plaintiff. While an important public interest certainly exists in protecting the reputations of citizens who have not been found liable for any wrongdoing, that interest must be balanced against the public interest of ending racially discriminatory housing practices. Having examined the factors above, regarding potential harm to Defendants' reputations, this Court finds that the public interest favors Plaintiff's efforts to eradicate housing discrimination. The record in the present case fails to satisfy the test for granting an injunction.

In accordance with the foregoing,

**IT IS HEREBY ORDERED** that "Defendants' Motion to Prohibit Publication of Notice of this Lawsuit" [docket # 28] is **DENIED.**

cause of their race." It also indicates that "[p]ersons found to be victims of housing discrimination may be entitled to receive monetary damages." The notice defines the specific cir-

cumstances under which a person "may be a victim," and gives the telephone number and address of the U.S. Department of Justice.