NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0001n.06

No. 12-1204

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Jan 02, 2013*
DEBORAH S. HUNT, Clerk

KENNETH RHINEHART,           )
                             )
    Plaintiff-Appellant,     )           ON APPEAL FROM THE
                             )           UNITED STATES DISTRICT
    v.                       )           COURT FOR THE EASTERN
                             )           DISTRICT OF MICHIGAN
DEBRA SCUTT, Warden; B. GARDON, Health Unit   )
Manager; B. CLEMENT, Medical Records; C. IVES,  )
Nurse Supervisor; K. HAMBLIN, Registered Nurse;  )
J. POTTER, Managed Care; PRISON HEALTH  )
SERVICES, INC.; AETNA, INC.; V. STEVENSON,  )
Physician; P. VEMURI, Physician,   )
                             )
    Defendants-Appellees.    )
                             )

BEFORE: KEITH, CLAY, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge. This interlocutory appeal arises from the district court's denial of plaintiff Kenneth Rhinehart's August 2011 motion for a preliminary injunction. For the reasons that follow, we affirm the order of the district court denying Rhinehart's motion. Rhinehart's motion sought an appointment with a liver specialist to receive a treatment plan for his liver disease. After Rhinehart's motion was filed, Rhinehart had a health emergency that required him to be seen by a liver specialist who recommended that Rhinehart be considered for a shunt that could reduce variceal bleeding. The prison's physician rejected the recommendation. This court recognizes that there is disagreement about Rhinehart's care and specifically whether a shunt is proper, but as a reviewing

- 1 -

court, this court is generally limited to the issues considered by the trial court. Even if the court assumes Rhinehart's motion was not mooted by the treatment plan he received following his October 2011 emergency, the district court did not abuse its discretion in denying Rhinehart's request for a preliminary injunction that would require the prison to schedule an appointment with a liver specialist.

Rhinehart is an inmate in a Michigan state prison with health problems including Hepatitis C, cirrhosis, and a large mass in his liver. Rhinehart alleges that the defendants are violating his Eighth Amendment rights by being deliberately indifferent to his painful condition. In August 2011, Rhinehart requested the district court to "order the Defendants to schedule Plaintiff to be seen by a qualified liver specialist/oncologist/hepatologist so that he can receive a qualified treatment plan to prevent a more rapid onset of his advanced liver disease." *Amended* Emergency Mot. for a TRO and/or Preliminary Injunction, 3.[1]

At the time the district court was considering Rhinehart's motion, the primary dispute was between Dr. Jerry S. Walden, a family medicine doctor whom Rhinehart's family hired as a consultant, and the prison's physicians: defendant Dr. Adam Edelman and Dr. Richard Kosierowski, a nonparty consulting oncologist hired by Prison Health Services. Walden disagreed with Edelman

---

[1] Rhinehart filed two nearly identical motions in August 2011. The August 29, 2011 amended motion is the relevant motion for this appeal and the court understands it simply to request an appointment with a liver specialist to develop a treatment plan. Rhinehart's earlier request for an appointment with a "liver specialist so Plaintiff can be evaluated and placed on a liver transplant list," Emergency Mot. for a TRO and/or Preliminary Injunction, 2, was dropped in his amended motion and is therefore considered waived. *See Amended* Emergency Mot. for a TRO and/or Preliminary Injunction, 2.

and Kosierowski on whether Rhinehart may have had cancer and whether an outside consultation was warranted. Dr. Walden assumed that the failure to find cancer was due to the location of the mass and suggested an immediate consultation with an oncologist. *See Amended* Emergency Mot. for a TRO and/or Preliminary Injunction Ex. B, July 29, 2011 Letter from Dr. Walden. Dr. Edelman and Dr. Kosierowski stated that liver cancer was not suggested and that "Rhinehart's medical needs [we]re being met within the Michigan Department of Corrections and an outside consultation with a liver specialist/oncologist/hepatologist [wa]s not needed." *See* Def. Prison Health Servs. Resp. Br. Ex. A, Aff. of Adam Edelman ¶¶ 6, 13; Defs. Prison Health Servs. Supp. Br. Ex. D, Aff. of Richard Kosierowski ¶¶ 5, 8. On the final day to submit evidence for consideration by the district court, defendant Prison Health Services introduced the opinions of two doctors who treated Rhinehart and agreed that Rhinehart's existing treatment was supported by the literature and updated guidelines. *See* Def. Prison Health Servs. Final Supp. Br. Ex. A, Aff. of Lynn Larson ¶19; Def. Prison Health Servs. Final Supp. Br. Ex. B, Aff. of Shan Ansari ¶18.

A September 7, 2011 biopsy was negative for cancer and positive for cirrhosis. *See* Defs. Scutt Resp. Br. Ex. A, Sept. 8, 2011 Health Record; Defs. Scutt Resp. Br. Ex. D, October 4, 2011 Clinical Progress Note.

These are the last facts discussed by the district court, but in Rhinehart's briefs on appeal, he emphasizes a medical emergency that occurred in late October 2011 while his motion was pending before the district court. Rhinehart was vomiting blood and he alleges this nearly resulted in his death. After being taken to the emergency room at Allegiance Health hospital, Rhinehart

received care from Dr. Lynn T. Schachinger, a gastroenterologist, who the parties agree is a liver specialist. Dr. Schachinger recommended that Rhinehart be considered for a Transjugular Intrahepatic Portosystemic Shunt (TIPS), which would necessitate a minimally invasive surgery but could reduce variceal bleeding. However, this procedure was rejected by Dr. Edelman. *See* Defs. Scutt Resp. Br. Ex. H, Allegiance Health Discharge Summ.. At oral argument, neither of the parties identified evidence in the record to explain why Dr. Edelman rejected the procedure. The defendants indicated that Dr. Edelman is a medical doctor whose specializes in "corrections medicine," not gastroenterology or any specialty related to liver disease. Oral Arg. at 19:47. However, the defendants contend that Dr. Edelman did consult with Dr. Yusuf, who is a gastroenterologist with a subspecialty in hepatology, about Dr. Schachinger's recommendation that Rhinehart receive the TIPS placement. According to the defendants, Drs. Edelman and Yusuf "concurred that it didn't make sense to do that particular procedure." *Id.* at 20:03.

The magistrate judge's Report and Recommendation thoroughly summarized the factual and procedural history up to the August 2011 motion and provided a brief analysis that focused upon the disagreement between Dr. Walden and the prison's physicians. The magistrate judge said Rhinehart had "at best, established a difference of opinion with respect to plaintiff's medical treatment" and that the opinion of Dr. Kosierowski, the consulting oncologist, in support of the defendants' position was perhaps the most persuasive. Report and Recommendation, Dec. 22, 2011 [hereinafter R&R], 17. After noting that a biopsy had been performed that showed Rhinehart was negative for cancer, the magistrate judge recommended that the court conclude that Rhinehart had not shown a "strong

or substantial likelihood of success on the merits." *Id.* at 18. Although the magistrate judge recognized that the preliminary injunction test is a four factor test, *see infra* Section II.B., the Report and Recommendation only analyzed the factor of likelihood of success on the merits.

Following Rhinehart's objections, the district court adopted the Report and Recommendation in its January 22, 2012 order. *See Rhinehart v. Scutt*, No. 11-cv-11254, 2012 WL 175420, at *4 (E.D. Mich. Jan. 22, 2012). The district court's order provided a more thorough legal analysis of the four factors governing whether a preliminary injunction should issue.

First, the district court found the likelihood of irreparable harm to be low because Rhinehart had neither shown a continuing deprivation of constitutional rights nor evidence that waiting for an adjudication on the merits would irreparably harm him. In making this determination, the district court noted that two years had already passed since Rhinehart filed his initial lawsuit. Second, the district court agreed with the magistrate judge that Rhinehart had not shown a likelihood of success. The district court noted the dispute between Dr. Walden and the prison's medical staff and stated that it was "highly unlikely" that Rhinehart would be able to show that his medical treatment fell below the constitutional standard of deliberate indifference under the Eighth Amendment. *Id.* at *2. The district court did not assess the preliminary injunction test's third factor because the court understood this factor to refer to harm to third parties and found that "the interest of third parties in this case is not significant." *Id.* Finally, the district court assessed the last factor, the public interest, by recognizing that in the absence of a strong constitutional claim, "[p]rinciples of both separation of powers and federalism discourage federal courts from unnecessary entanglement in the

administration of the prison health care system." *Id.* at *3. Because the factors it assessed all weighed against the issuance of a preliminary injunction, the court denied Rhinehart's August 2011 motion. Rhinehart timely appealed, and this matter has been thoroughly briefed.

On appeal, Rhinehart seeks to attach a request for a TIPS placement along with his August 2011 motion even though he did not mention a shunt in any of his briefing before the district court. The issue before the district court, and subsequently on review by this court, was his request for an appointment with a specialist to receive a liver disease treatment plan. Following his October 2011 emergency, Rhinehart was seen by Dr. Schachinger, who Rhinehart agrees is a liver specialist. *See* Rhinehart's Reply Br. 8–9. Dr. Schachinger's suggestion that Rhinehart be considered for a TIPS placement can be considered a treatment plan. Thus, on its face, Rhinehart's August 2011 motion appears to be moot. However, at oral argument, Rhinehart suggested there was a difference between the emergency care that Dr. Schachinger provided and the plan that could result from a scheduled appointment. We will assume that Rhinehart's August 2011 motion is not moot, but we limit our consideration to issues presented to the district court.

The district court did not abuse its discretion in denying Rhinehart's motion for an order requiring the defendants to schedule an appointment with a specialist prior to an adjudication on the merits. Pretrial injunctive relief is an extraordinary remedy. The purpose of pretrial injunctive relief is "to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Rhinehart alleges life-threatening health risks, but even serious health risks alone do not entitle a plaintiff to a preliminary injunction. To obtain a

preliminary injunction, a plaintiff must show (1) "that he is likely to succeed on the merits," (2) "that he is likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in his favor," and (4) "that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). This court will only reverse a district court's denial of preliminary injunctive relief if the circumstances clearly demanded an injunction and the district court abused its equitable discretion. *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). An application of the test for pretrial injunctions shows that the district court did not abuse its discretion.

Rhinehart has not shown that he is likely to succeed on the merits. Defendant's underlying claim is that the prison officials have been deliberately indifferent to his medical needs. Such a claim requires him to show both that the "alleged mistreatment was objectively serious," and that the officials "subjectively ignored the risk to the inmate's safety." *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011). As the district court noted, "[c]laims of deliberate indifference to medical needs are difficult to prove." *Rhinehart*, 2012 WL 175420, at *3.

Neither negligence alone, nor a disagreement over the wisdom or correctness of a medical judgment is sufficient for the purpose of a deliberate indifference claim. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Sanderfer v. Nichols*, 62 F.3d 151, 154–55 (6th Cir. 1999). In this case, the district court found—and we agree—that Rhinehart has not alleged more than a difference of opinion with respect to his medical treatment, and as a general rule, where a plaintiff has received care, he will not be able to sustain a claim of deliberate indifference. *See Westlake v. Lucas,* 537 F.2d 857, 860

n.5 (6th Cir. 1976). He alleged significant physical pain, and while the district court was appropriately sympathetic, there was no evidence presented that this pain was being caused deliberately by the prison staff, or was being caused by their neglect. While it is possible for the care in a prison to be so "grossly inadequate" as to constitute deliberate indifference, *see Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843–44 (6th Cir. 2002), the magistrate and district court's findings suggest very strongly that this was not the case here. Instead, the district court found that the treatment offered by the defendants is consistent with his conditions. In addition, defendants detail a long history of treatment, consistent with medical protocols, and substantiated by the record. *See, e.g.*, Br. for Def.-Appellees Debra Scutt, 9–12. Courts are hesitant to second-guess professional judgments exercised by medical professionals. *See, e.g.*, *Youngberg v. Romeo*, 457 U.S. 307, 321–23 (1982). The treatment provided to Rhinehart does not clearly suggest cruel and unusual punishment.

Rhinehart argues that because the likelihood of irreparable harm is high, he deserves leeway for showing a lesser likelihood of success on the merits. Evening assuming the gravity of potential harm to Rhinehart, the court must still take into account the weakness of his merits argument.

With respect to likelihood of irreparable harm, it was not clear error for the district court to make the factual determination that waiting for an adjudication on the merits will not irreparably harm Rhinehart. At this point, Rhinehart has not shown a continuing violation of his Eighth Amendment rights, so the irreparable injury must be more than his allegation of a constitutional violation. *Cf. Elrod v. Burns*, 427 U.S. 347, 373–74 (1976) (holding that even a minimal continuing

First Amendment violation is an irreparable injury). Granted, Rhinehart's entire allegation is that he is being harmed, but he has failed to show that his condition will worsen if he is denied his requested relief immediately. As the district court noted, there is no question that Rhinehart is suffering. But the seriousness of his condition is not, without some constitutional deprivation, enough to show a harm that requires relief prior to the adjudication of his claims. He alleges that complications from his liver disease nearly killed him in October 2011. Nevertheless, Rhinehart is receiving some medical care, and the October 2011 incident can be seen as an example of Rhinehart's receiving the care that he needed to avoid irreparable harm without the need for an injunction.

In addition, many of Rhinehart's alleged harms, even if they were likely to succeed under the deliberate indifference standard, do not warrant an injunction. For example, he claims that he was denied care for two weeks after his transfer to Cotton Correctional Facility. *See* Rhinehart's Br., 39. But this is irrelevant to his immediate need for medical care, and at most, would be a claim for damages.

Furthermore, the record shows that the prison officials made significant findings with regard to Rhinehart's fitness for a liver transplant, and accordingly, the harm which Rhinehart claims is really no more than a demand for this court to substitute its own judgment in place of that of medical professionals. Granted, the physician Rhinehart's family hired, Dr. Walden, had a different opinion from the prison's physicians, but the question about which medical opinion to credit is a decision vested in the sound discretion of the district court. A review of the record shows that the district

court's conclusion was well supported by the evidence. Not only did four doctors not agree with Dr. Walden's opinion, but one of these, Dr. Kosierowski, is an oncologist, while Dr. Walden is a family doctor. The magistrate judge found Dr. Kosierowski's opinion to be perhaps "the most persuasive piece of evidence." R&R, 17. It is conceivable that a different judge would have found Dr. Walden's opinion to be more persuasive, but it was not clear error for the district court to credit the defendants' witnesses and to find that Rhinehart had not clearly shown a likelihood of irreparable harm.

The balance of equities weighs against a preliminary injunction. The district court appears to have treated the preliminary injunction test's third factor as an inquiry that considers only third parties. However, as the Supreme Court's decision in *Winter* and this court's decision in *Overstreet* show, the third factor refers to the balance of equities between the movant and other parties, not just third parties to the litigation. *See Winter*, 555 U.S. at 24–31 (assessing the balance of the equities by looking at the burden on the Navy, the effective defendant); *Overstreet*, 305 F.3d at 579 (assessing third factor by looking at potential harm to the defendant); *see also* 11A Wright & Miller, *Fed. Prac. & Proc. Civ.* § 2948.2 (2d ed. 2012) (referring to this factor as "balancing hardship to parties" and implying that the burden on the defendant of a judicial restraint without an adjudication on the merits is addressed by this factor).

The defendants argue that they have a specific procedure in place for requesting medical care and that they have an interest in encouraging prisoners to follow policies and procedures rather than seeking relief in federal courts. The defendants also claim that granting Rhinehart's request for an

injunction would detrimentally affect the prison's care for other inmates because its medical resources would be diverted to Rhinehart. *See* Br. for Def.-Appellees Debra Scutt, 30.

On the other hand, Rhinehart argues that he should immediately receive an appointment with a specialist regarding his liver so that he can receive a treatment plan. He believes that a qualified treatment plan will provide options for care that will "prevent a more rapid onset of his advanced liver disease." *Amended* Emergency Mot. for TRO and/or Preliminary Injunction, 3. As the record shows, Rhinehart received a treatment plan from Dr. Schachinger, who Rhinehart agrees is a liver specialist. *See* Rhinehart's Reply Br. 8–9. At oral argument, Rhinehart argued that the relief he is seeking is an order requiring the defendants to provide the care recommended by the treatment plan. But this is beyond the relief Rhinehart sought from the district court. Rhinehart sought a treatment plan and a treatment plan is just that—a plan—and the August 2011 motion did not request performance of any procedures or adoption of the plan's recommendations. Rhinehart's relevant interest for the current analysis is his interest in an appointment and plan, not a TIPS placement or any other specific care that may be part of the plan. The record does not provide much evidence about the consequences of performing the TIPS placement on Rhinehart because it was not argued before the district court below. The lack of evidence about the procedure below makes it difficult for this court to weigh and address on review.

The interests of the defendants must be balanced against Rhinehart's interest in receiving another appointment with a specialist without waiting for a hearing on the merits. If Rhinehart had shown a pressing need, the equities may have tipped in his favor, but as discussed, the district court

found that Rhinehart had not shown a likelihood of irreparable harm. The balance that is then left is between Rhinehart's interest in immediately receiving care for a health condition that is unlikely to result in irreparable harm and the defendants' interests in managing their medical procedures and resources and avoiding an expenditure without a merits determination by a court. This balance weighed against a preliminary injunction.

Finally, Rhinehart has not shown that the public interest clearly supports a preliminary injunction. In constitutional cases, an inquiry into the public interest is difficult to separate from the likelihood of success on the merits because "the public interest is promoted by the robust enforcement of constitutional rights." *Am. Freedom Def. Initiative v. Suburban Mobility for Reg. Transp.*, 698 F.3d 885, 896 (6th Cir. 2012). However, in the absence of a likely constitutional violation, the district court correctly recognized that separation of powers and federalism strongly discourage the federal courts from entangling themselves in the administration of state prison health care systems. *See, e.g.*, *Turner v. Safley*, 482 U.S. 78, 84–85 (1987); *Bell v. Wolfish*, 441 U.S. 520, 544 (1979); *Preiser v. Rodriguez*, 411 U.S. 475, 491–92 (1973). The public interest in leaving the administration of state prisons to state prison administrators is another factor weighing against preliminary injunctive relief in this case.

Our affirmance, of course, does not foreclose future motions for preliminary relief based on developments subsequent to those under consideration on this appeal. The court recognizes the importance of Rhinehart's life, health, and dignity. The magistrate judge's report and

recommendation indicates that the most favorable view of Rhinehart's evidence "established a difference of opinion with respect to the plaintiff's medical treatment." R&R, 17. At oral argument, the defendants conceded that cost was not a concern and that a TIPS placement could be done in Michigan for a Michigan state prisoner. Counsel did not indicate how defendants would suffer any specific adverse consequences or prejudice if Rhinehart received the procedure. Dr. Schachinger, a liver specialist provided by the defendants, indicated that, upon discharge in October 2011, "the patient was told about [the] seriousness of his disease and requirement for [a] TIPS procedure, because the patient has potential to re-bleed . . . if TIPS procedure is not performed." Defs. Scutt Resp. Br. Ex. H, Allegiance Health Discharge Summ.. If the medical emergency in October 2011 and the recommendation for a TIPS placement indicate that conditions have changed since the district court's denial of the preliminary motion below, the proper route is for Rhinehart to file a motion for preliminary relief that includes evidence not provided in the motion below.

However, upon our review of their motion for preliminary relief and the record below, Rhinehart has not shown that the district court abused its discretion in denying his August 2011 request for an appointment and treatment plan. The judgment of the district court is affirmed.