McKEAGUE, Circuit Judge,
dissenting.
Because it is obvious that the district court overstepped its bounds in numerous ways by inserting itself into what were orderly election processes in accordance with state law, I dissent from the denial of the motion to stay.
Let’s consider the chronology once again. Presidential election candidate Jill Stein received approximately one percent of the nearly 4.8 million votes cast in Michigan in the presidential election that culminated on November 8, 2016. Results of the election have been certified by the Board of State Canvassers and names of the presidential electors have been transmitted by the Michigan Governor to the United States Secretary of State, as required by federal law. Undeterred by the results of the election, Stein filed her petition for a recount under M.C.L. § 168.879, less than one week ago, on November 30, 2016, alleging she was “aggrieved on account of fraud or mistake.” Objections to the request were filed on December 1, 2016, and the Board of State Canvassers timely addressed the matter, held a hearing, and rejected the objections on December 2. Michigan Director of Elections, defendant *572 Christopher M. Thomas, in fulfillment of his duties and in compliance with M.C.L. § 168.882(3), thereupon directed that the recount would commence on December 7, after two business days had elapsed since the ruling of the Board. Thus, an orderly and expedited process for addressing Stem’s request in accordance with state law was well under way.
Stein was not satisfied however. She commenced litigation in federal district court on December 2, demanding, in contravention of an undisputedly clear and unambiguous state law, that the recount be commenced immediately. She moved the court for a temporary restraining order enjoining enforcement of the state-law mandated “delay” until December 7. The district court took the extraordinary measure of scheduling a hearing on Sunday morning at 10:30 a.m., December 4, and issued a temporary restraining order requiring commencement of the recount at noon on Monday, December 5. That is, even though a temporary restraining order is an extraordinary remedy designed for the limited purpose of preserving the status quo pending further proceedings on the merits, see University of Texas v. Camenisch, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981), the district court peremptorily intervened to disrupt the status quo. And the court did so on the thinnest of legal foundations—based on a speculative showing of harm and undefined showing of legal entitlement to relief.
The district court justified its decision by concluding that Stein had shown “a likelihood of success on the merits” of the claim that the two-day waiting period could result in a violation of the First Amendment right to vote, without even identifying any factual basis for Stein’s allegation that she was aggrieved on account of fraud or mistake. Instead, the court relied implicitly on the showing that Michigan’s voting machines, like voting machines across the nation, are vulnerable to potential hacking or cyberattack—de-spite the absence of any evidence of such tampering. Nor did the district court identify the precise nature of the supposed violation of the First Amendment right to vote posed by this vulnerability. .
The court observed that the right to vote is fundamental, albeit not defined in the Constitution, and paid lip service to the Anderson/Burdick standard that applies to such a claim. See Anderson v. Celebrezze, 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983), and Burdick v. Takushi, 504 U.S. 428, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992). Yet, the court failed to apply the first step of the Anderson/Burdick analysis, which requires assessment of the character and magnitude of the asserted injury to First Amendment rights. If the state regulatory scheme is generally applicable and non-discriminatory, as is Michigan law, then, pursuant to the Supreme Court’s most recent guidance, it is deemed to impose no more than a minimal burden and is presumed to pass constitutional muster. Ohio Democratic Party v. Husted, 834 F.3d 620, 631 (6th Cir. 2016) (citing Crawford v. Marion Cty. Election Bd., 553 U.S. 181, 200, 202-03, 128 S.Ct. 1610, 170 L.Ed.2d 574 (2008)). The district court failed to explain how permitting the recount process to proceed in accordance with state law imposed or threatened any cognizable burden on Stem’s or co-plaintiff Louis Novak’s right to vote.
The majority essentially gives Stein a pass on this fundamental prerequisite to injunctive relief, observing that she was only required to meet a “lowered bar” because her showing of irreparable harm is “extremely strong.” Really?
The district court concluded that Stein had shown a likelihood of irreparable harm if, pursuant to Michigan law, the recount *573 were not commenced until December 7, based on the showing that completing the recount by the December 13 “safe harbor date” would be a “monumental undertaking.” There is no dispute: the recount process is demanding. But the process is governed by presumptively valid state law. Stein made her request for recount, under state law, only on November 30; and her request was in the process of being granted under the provisions of that same state law when she, on the same day objections were overruled, December 2, complained that the state law process was too slow. For the sake of accelerating the process by two days, the district court ordered defendants, in contravention of state law, to commence the recount immediately, on December 5. Yes, the time period within which the recount must be accomplished, per federal law, is short, but the record is devoid of any showing that the constitutionally protected right to vote, whether Stein’s or that of co-plaintiff Michigan voter Louis Novak, is threatened with irreparable harm if the statutorily prescribed process is permitted to run its course.
The majority reads “monumental undertaking” as synonymous with “impossibility” and characterizes the two-day period as “effectively nullifying” Stein’s right to a recount. And this is the “extremely strong” showing of irreparable harm that is said to obviate the need for the court to scrutinize likelihood of success on the merits. Yet, the record is devoid of any showing that the recount will not be timely completed. Nor is it clear, to anyone apparently, what the impact of post-December 13 completion would be. December 13 is simply a “safe harbor date.” The electors do not actually meet and cast their votes until December 19. There is simply no evidence on the likelihood of such dire consequences as Stein and the majority imagine. Speculation about what may or may not happen in the future is hardly justification for federal court interference with what is by all appearances an orderly and expedited state election process.
Further underscoring the impropriety of the district court’s interference is its own acknowledgement that proceedings challenging the Board of State Canvassers’ decision were pending in the Michigan Court of Appeals and Michigan Supreme Court since December 2 and that the Michigan Court of Appeals had scheduled a hearing on Michigan Attorney General Bill Schuette’s emergency complaint for writ of mandamus on December 6. Again, it was and is abundantly clear that Michigan authorities in the executive and judicial branches have taken great pains to fairly address the merits of Stein’s request under the law.
So, stepping back to behold this picture with perspective, we find that, even though the ' Constitution recognizes the states’ clear prerogative to regulate election processes and to thereby ensure they are accompanied by fairness and order, not chaos, see Ohio Democratic Party, 834 F.3d at 626-27; and even though a temporary restraining order is an extraordinary remedy designed for the limited purpose of preserving the status quo (not demolishing it) pending further proceedings on the merits; and even though plaintiff Stein was unable to muster even the barest showing of likelihood of success and irreparable harm; and even though state court proceedings to ensure the fairness of any recount are currently pending and poised to address any demonstrated need for relief, a district judge has seen fit to deploy the judicial power of the federal sovereign to intrude upon proceedings under state law that are traditionally entrusted to the states ... simply because he thinks, in regard to a statutory two-day period (!), that he has a better idea than the elected *574 representatives of the people of the State of Michigan ... and because he can.
Moreover, in manifest display of partiality and overreach, the district court purports to have granted relief even more expansive than was requested. Whereas plaintiff Stein asked the court to enjoin any delay in commencement of the recount prior to December 7 (when the recount otherwise would have been commenced in accordance with state law), the district court purports to have not only ordered immediate commencement of the recount, but continuation thereof “until further order of this Court.” And not only that: the district court further defined the required continuation as including the requirement that “all governmental units participating in the recount to assemble necessary staff to work sufficient hours to assure that the recount is completed in time to comply with the safe harbor provision of 3 U.S.C. § 5.” R. 16, Temporary Restraining Order at 7-8, Page ID 678-79.
To this, I can only respond, “Astounding!” “Just who do we think we are?” Obergefell v. Hodges, — U.S. -, 135 S.Ct. 2584, 2612, 192 L.Ed.2d 609 (2015) (Roberts, J., dissenting).
At the very least, we should stay any effect of the temporary restraining order that extends beyond 12:01 a.m. on December 7, 2016. Even the district court’s own findings and conclusions, as insufficient as they are, justify absolutely no relief beyond that time, when state officials were prepared to comply with state law. By ordering commencement of the recount on December 5, in advance of the December 7 date provided for under state law, the district court granted Stein all the relief she had requested in her motion. By ordering continuation and completion of the recount by December 13, the court purported to assert “power” in excess even of the “authority” it had illegitimately claimed for itself. This overreach should be seen for what it is: a naked and illegitimate power grab that should stand as no impediment to the state courts’ orderly adjudication of the state law issues before them in accordance with state law.
My colleagues seem to recognize this infirmity in the district court’s order by observing that, depending on the outcome of proceedings in the state courts, they “expect the district court to entertain any properly filed motions to dissolve or modify its order in this case.” In my opinion, this should be read to mean that, if the Michigan courts conclude that Stein has no right to a recount, the temporary restraining order should be vacated. If, on the other hand, the Michigan courts allow the recount to proceed, then the two-day waiting period relief granted in the temporary restraining order will essentially have been mooted by the passage of time. Either way, the temporary restraining order will cease to have any continuing vitality.
In my opinion, no issue of constitutional magnitude is implicated by any of plaintiff Stein’s pleadings. By issuing the temporary restraining order, the. district court abused its discretion. By refusing to stay this judicial overreach, the majority perpetuates, and lends the Sixth Circuit’s imprimatur to, modern confusion surrounding the federal courts’ limited oversight of state election processes. I respectfully dissent.