**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 17-3309 & 18-1852
_____

AUDREY GORGONZOLA; GAIL G. HUDSON; KATHRYN DAANE; DOLORES
VASSALLUZZO; HAROLD P. THOMAS; THOMAS C. MARCIN

v.

DIRECTOR UNITED STATES OFFICE
OF PERSONNEL MANAGEMENT,
                                                        Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(No. 2-10-cv-01768)
Chief District Judge:  Honorable Mark R. Hornak

Argued: June 26, 2019

Before:  SMITH, Chief Judge, and CHAGARES and BIBAS, Circuit Judges.

(Filed: August 5, 2019)

Marleigh D. Dover
Stephanie R. Marcus **[ARGUED]**
United States Department of Justice, Civil Division
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

        Counsel for Appellant

Jonathan K. Cohn
Maureen Davidson-Welling **[ARGUED]**
John E. Stember
Stember Cohn & Davidson-Welling
425 First Avenue, 7th Floor

The Hartley Rose Building
Pittsburgh, PA 15219

Timothy P. O'Brien
1705 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA 15219

Counsel for Appellees

_____

OPINION[*]

_____

CHAGARES, Circuit Judge.

The Office of Personnel Management ("OPM") is a government agency tasked with administering retirement benefits for our nation's civil servants. See 5 U.S.C. §§ 1101–1105, 8347. These appeals arise from a long-running dispute over how OPM has handled the annuities of retired nurses who worked for the Department of Veterans Affairs ("VA").

Almost nine years ago, five retired VA nurses brought a class action against OPM, alleging that the agency had failed to notify — and recalculate the annuities of — VA nurses who were entitled to an annuity recalculation under a 2002 law. Although the litigation is still ongoing, OPM has appealed three orders of the District Court: two orders requiring OPM to notify certain subsets of the class of their potential right to an annuity recalculation, and another order requiring OPM to "hold back," for a future

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

award of attorneys' fees, 30% of any retrospective payments made to any class members. Because the appeals of the two notice orders are now moot, and because the appeal of the holdback order is not independently reviewable in an interlocutory appeal, we will dismiss for lack of jurisdiction.

## I.

The history of this case is long and tedious; we recite only what is necessary.

In 2002, Congress passed the Department of Veterans Affairs Health Care Programs Enhancement Act (the "Enhancement Act"), which, among other things, improved the benefits available to retiring VA nurses. See Pub. L. No. 107-135, 115 Stat. 2446 (2002). It did so by changing the way that OPM measures service time, which is a key factor in calculating a VA nurse's retirement annuity. See 38 U.S.C. § 7426(b)(1)(B). Previously, OPM prorated VA nurses' part-time service when calculating their retirement annuities. See 38 U.S.C. § 7426(b)(2) (2001). Under the Enhancement Act, OPM must count part-time service rendered before April 7, 1986 as full-time service. See Pub. L. No. 107-135, § 132 (codified at 38 U.S.C. § 7426(c). Thus, many long-serving VA nurses stood to benefit from this new calculation method.

The Enhancement Act did not specify whether it applied retroactively to already retired VA nurses. Believing that it did, over one hundred nurses who had worked at the VA part time before April 7, 1986, but who had retired before 2002, filed claims with OPM seeking retroactive application of the Enhancement Act and thus a recalculation of their annuities. See Lippman v. OPM, No. PH-0831-08-0212-I-11, 2008 WL 2166702 (M.S.P.B. May 7, 2008). OPM countered that the Enhancement Act was not retroactive.

3

An Administrative Law Judge with the Merit Systems Protection Board ("MSPB") agreed with the nurses and ordered OPM to give them full-time credit for their part-time work and recalculate their annuities accordingly. Id. Because the full MSPB declined to review the decision in Lippman, it did not become precedential for future claimants. See Horner v. Burns, 783 F.2d 196, 201–02 (Fed. Cir. 1986).

Counsel for the Lippman claimants soon began submitting recalculation claims to OPM on behalf of other similarly situated retired nurses. Each time counsel submitted a claim, OPM recalculated the claimant's annuity. But OPM, as it admits, would recalculate annuities only for claims submitted by counsel.

So, in December 2010, five retired VA nurses[1] filed a class action lawsuit in the District Court for the Western District of Pennsylvania against the Director of OPM on behalf of all VA nurses who had worked part time before April 7, 1986, but retired before Congress passed the Enhancement Act. They alleged that OPM, by only recalculating the annuities of those nurses who submitted a counseled claim, violated the Equal Protection and Due Process Clauses.[2] The nurses requested that the District Court, among other things, "[i]ssue a permanent injunction, directing OPM to identify each member of the Class, recalculate her pension in accordance with the [Enhancement] Act, pay any

---

[1] Since this litigation began, two of the originally named plaintiffs — Sylvia Wigton and Mary Jane Thomas — have passed away.
[2] They also alleged violations of the Administrative Procedure Act and the Rehabilitation Act of 1973, though those claims were later dismissed and are no longer relevant to this appeal.

4

benefits past due from the date of retirement, and adjust her monthly benefit going forward." Joint Appendix ("JA") 330.

After the litigation began, OPM began explaining its conduct. OPM revealed that, following the Lippman decision, it had issued an internal "policy directive" determining that the Enhancement Act applied retroactively. JA 237. But OPM decided that it could not identify and notify all nurses eligible for a recalculation because its computerized annuity roll, while containing basic information about annuitants, did not contain employee-service history. Then, as the litigation advanced, OPM claimed that it realized that there was another database that could help it identify nurses entitled to a recalculation. That database, the Central Personnel Data File ("CPDF"), had been maintained by OPM between 1972 and 2009 and covered nearly all federal civilian employees in the Executive Branch. The CPDF, according to OPM, could identify all nurses who had worked part time for the VA since December 1972.

Thus, as the litigation proceeded in the District Court, OPM began using the CPDF along with its annuity roll to generate a list of all "active annuitants who had part-time service as a VA nurse between December 1972 and April 6, 1986, and who retired between April 7, 1986 and January 23, 2002, and the survivor annuitants of such individuals." JA 240. That list would not contain all the retired nurses entitled to a recalculation, as it was possible that certain nurses who had retired before 2002 had worked part time before December 1972. OPM therefore compiled a supplemental list of all "active annuitants or survivor annuitants who had full-time and/or intermittent service but no part-time service as a VA nurse between December 1972 and April 6, 1986, and

5

retired between April 7, 1986 and January 23, 2002." JA 241. Not everyone on that supplemental list would necessarily be entitled to a recalculation, but it was a start.

OPM managers declared that they had begun going through the first list to confirm that the annuitants or survivor annuitants were entitled to a recalculation and that they were preparing to send a mass mailing to everyone on the supplemental list. And they did one more thing — they sent letters addressed to the named plaintiffs' counsel informing them "that the named plaintiffs' annuities had been recomputed and that they were entitled to an increased retroactive and prospective annuity." JA 242.

The plaintiffs objected. They argued that OPM had actually sent those letters directly to the plaintiffs and was trying "to deprive [the class] of a Court-supervised Class action remedy and appropriate monitoring and review by Plaintiff's Counsel." JA 156–57. They requested that the District Court prohibit OPM from further contacting the lead plaintiffs or class members without notice to counsel, pursuant to Federal Rule of Civil Procedure 23(d)(1). The District Court granted that request, prohibiting OPM from "initiat[ing] contact or otherwise engag[ing] in communications with any named plaintiff or putative class member without notice to and the consent of plaintiffs' counsel." JA 278.

The plaintiffs then filed an amended complaint, and OPM moved to dismiss for lack of jurisdiction.[3] OPM argued mainly that the Civil Service Reform Act ("CSRA") created an exclusive remedial scheme for federal benefits claims: initial adjudication by

---

[3] OPM had also moved to dismiss prior to the District Court's Rule 23(d) order, but it renewed its motion after the plaintiffs filed an amended complaint.

6

OPM, with an appeal available to the MSPB, and subsequent judicial review available only in the Court of Appeals for the Federal Circuit.

The District Court denied OPM's motion, holding that it did have subject matter jurisdiction, albeit to a limited extent. In a thorough opinion, the District Court concluded that it did "not have jurisdiction to order OPM to recalculate any individual's payment," as "that relief can only be sought through the CSRA." Wigton v. Berry, 949 F. Supp. 2d 616, 636–37 (W.D. Pa. 2013). But it explained that it did have jurisdiction "to entertain a challenge to an undisclosed, systematic determination of OPM to fail to notify individuals of" their eligibility for certain benefits, an eligibility that OPM "unequivocally concedes" is statutorily required. Id. at 637.

The District Court eventually certified the class, and, in April 2017, granted summary judgment for the plaintiffs on their Equal Protection claim. The District Court explained that OPM, with no rational basis, had treated retired nurses differently by providing some with notice of their rights and others without. The District Court also determined that the plaintiffs had alleged a viable Due Process claim, and it ordered that the parties proceed to discovery. In light of those rulings, the District Court ordered that "[c]ounsel for all parties shall file a joint status report on the docket detailing the procedure for identifying and giving class and remedial (as to the Equal Protection claim) notice to class members and appending an agreed-upon form of such notice." JA 19. And the District Court modified its earlier Rule 23(d) order "to allow OPM to recalculate and pay any increased annuities as well as any retroactive 'catch up' payments due and owing any annuitant or beneficiary." JA 17. The District Court, however, provided that

"OPM will withhold a portion of the gross amount of any retrospective payment(s) in an amount which will be set by further Order, and shall hold such monies in trust for the potential payment of common fund attorneys' fees and costs, pending disposition as may be later ordered by this Court for the payment of counsel fees and costs." JA 17–18.

As directed by the District Court, the parties submitted a Joint Status Report on August 1, 2017. The Report explained that OPM had generated four lists:

1. A list of all active federal annuitants who retired between April 7, 1986, and January 23, 2002, (or their survivor annuitants) who had worked part time at the VA before April 7, 1986 ("List 1");

2. A list of all active federal annuitants who retired between April 7, 1986, and January 23, 2002, and <u>may</u> have worked part time at the VA before 1972 ("List 2");

3. A list of all beneficiaries of deceased or survivor annuitants who had received annuities based on qualifying part-time VA work ("List 3");

4. A list of all beneficiaries of deceased annuitants who may have worked part time at the VA before 1972.

According to the Joint Status Report, the parties had agreed upon procedures "to identify and notify Lists 1 and 3," as well as the language of the notices. JA 966. The District Court, on August 21, 2017, approved the notice forms for Lists 1 and 3 with some minor qualifications and ordered their issuance. Two days later, the District Court issued another order directing OPM to "hold back" 30% of any retrospective payments to

8

annuitants for a possible future attorneys' fee award.  OPM appealed both the notice order

and the holdback order.

In February 2018, the parties submitted an agreement regarding the procedures

and language for notification of List 2.  The District Court approved that notice the next

day and ordered the parties to send it.  OPM appealed that order too, and we consolidated

that appeal with OPM's appeal of the prior notice and holdback orders.

## II.

OPM asks us to vacate the District Court's notice and holdback orders.  We cannot

do so because we do not have jurisdiction over these interlocutory appeals.  OPM has

now complied with the two notice orders, so its appeal of them is moot.  And because the

appeal of the holdback order is interlocutory and does not meet any of the exceptions to

the final judgment rule, we lack appellate jurisdiction to hear it at this time.  We thus

must dismiss OPM's appeals for lack of jurisdiction.

## A.

OPM admits that it has complied with the two notice orders it has appealed.  See

OPM Suppl. Br. 1.  "As a general principle, once a party has complied with a court order

or injunction, and has not been penalized or suffered any prejudice that could be

remedied on appeal, the appeal is moot."  Harris v. City of Philadelphia, 47 F.3d 1311,

1326 (3d Cir. 1995).  We hold that OPM's appeals of the notice orders are moot.

OPM disagrees, arguing that its appeals are not moot because "it is still possible to

undo the effects of the . . . compliance with the injunction."  Acierno v. Mitchell, 6 F.3d

970, 973 n.8 (3d Cir. 1993).  It points out that the notices directed by the notice orders

9

included a provision stating that a certain percentage of any recalculated annuity payment will be held back for a potential attorneys' fee award. That provision, OPM argues, keeps these appeals alive because, if we were to vacate the notice orders, OPM could send a new mailing repudiating the holdback provision. But OPM's dispute over notification of the holdback, at bottom, is about allocation of attorneys' fees. A fight over attorneys' fees cannot save an interlocutory appeal from mootness. See Lewis v. Cont'l Bank Corp., 494 U.S. 472, 480 (1990).[4]

OPM also argues that its appeals of the notice orders are not moot because the parties continue to disagree over the notice to be provided to different subsets of class members. Deciding the present appeals, OPM contends, could affect the other, ongoing disputes in this case. But the issue here is not the mootness of the entire case but the mootness of these interlocutory appeals. See Univ. of Tex. v. Camenisch, 451 U.S. 390, 394 (1981). Once the issue on appeal is moot, it does not matter whether the entire case remains live; we cannot hear the appeal. See id.

OPM finally suggests that we should hear its appeals of the notice orders in the interest of judicial efficiency, contending that the primary issue here — whether the District Court had subject matter jurisdiction — will inevitably return and need to be re-briefed and re-argued. But OPM does not provide, nor can we locate, any support for the

---

[4] We reject OPM's contention that "[t]he holdback requirement . . . was an integral part of the notice ordered by the district court." OPM Br. 22. Notice of the holdback requirement, though it appeared in the same notice directed by the notice orders, is conceptually distinct from notice of the plaintiffs' potential right to increased retirement benefits. Only the latter is the substantive relief sought by the plaintiffs in this case.

proposition that an appeal can be heard in the name of judicial efficiency when the appeal is no longer live. And that is unsurprising, given that "mootness is a jurisdictional issue." Clark v. K-Mart Corp., 979 F.2d 965, 967 (3d Cir. 1992) (en banc). OPM relies on our decision in In re Grand Jury Matter #3, 847 F.3d 157, 164–65 (3d Cir. 2017) (per curiam), but there, the defendant still stood to be harmed by the appealed order. Here, by contrast, the notice orders have run their course and cannot cause any additional harm to OPM.

Because OPM's appeals of the notice orders are now moot, we will dismiss them for lack of jurisdiction.[5]

B.

We also must dismiss OPM's appeal of the holdback order because it is an interlocutory appeal that we cannot consider at this time.

As a general rule, we have jurisdiction to hear appeals only from "final decisions." 28 U.S.C. § 1291. There are, of course, some exceptions. As relevant here, we have appellate jurisdiction under 28 U.S.C. § 1292(a)(1) to review "[i]nterlocutory orders of the district courts of the United States . . . granting, continuing, modifying, refusing or dissolving injunctions." We have defined injunctions as orders "that are directed to a party, enforceable by contempt, and designed to accord or protect some or all of the substantive relief sought by a complaint in more than a temporary fashion." Cohen v. Bd.

---

[5] Because we conclude that OPM's appeals of the notice orders are moot, we need not decide whether they are orders granting injunctions for purposes of immediate appeal under 28 U.S.C. § 1292(a)(1).

of Trustees of the Univ. of Med. & Dentistry of N.J., 867 F.2d 1455, 1465 n.9 (3d Cir. 1989) (en banc) (quotation marks and brackets omitted).

Under that definition, the holdback order is not an order granting an injunction because it is not "designed to accord or protect some or all of the substantive relief sought." Id. It is essentially an order securing funds, and we have held that such orders are not appealable under § 1292(a)(1). See In re Pressman-Gutman Co., Inc., 459 F.3d 383, 393 (3d Cir. 2006) ("[T]raditional interim security orders, such as orders granting a writ of replevin or attachment pending disposition of an action . . . fall outside the scope of section 1292(a)(1)."); see also NutraSweet Co. v. Vit-Mar Enters., Inc., 176 F.3d 151, 154 (3d Cir. 1999) (citing cases holding that attachment and replevin orders are not appealable injunction orders); cf. Hastings v. Maine-Endwell Cent. Sch. Dist., 676 F.2d 893, 896 (2d Cir. 1982) (holding that orders to pay attorneys' fees are not injunctive orders under § 1292(a)(1)).

OPM nevertheless argues that the holdback order is injunctive because it "affects a portion of the substantive relief that plaintiffs seek in this case — retroactive annuity payments — by requiring that a percentage of such payments be held in trust by OPM." OPM Br. 23. But payment of annuities is no longer the substantive relief at issue in this case. Per the District Court's ruling on its subject matter jurisdiction, this case is now solely about providing notice, not payments. OPM insists that it "faces legal consequences from imposition of the holdback order," OPM Br. 23, but legal consequences alone do not make the holdback order "designed to accord or protect some or all of the substantive relief sought" in this case. Cohen, 867 F.2d at 1465 n.9

12

(quotation marks omitted). Any order securing funds has legal consequences, but that does not make it injunctive under the definition we adopted in <u>Cohen</u>.

Lastly, OPM contends that, even if the holdback order is not independently appealable, we should exercise pendent appellate jurisdiction over it. But because the other possible jurisdictional hook — the appeals of the notice orders — is now moot, we cannot exercise pendent appellate jurisdiction over the holdback order.

III.

For the foregoing reasons, we will dismiss OPM's appeals for lack of jurisdiction.